**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SCOTT TEUTSCHER, an individual, *Plaintiff-Appellee*, <br><br> and <br><br> RIVERSIDE SHERIFFS' ASSOCIATION, *Defendant-Appellee*, <br><br> and <br><br> RIVERSIDE SHERIFFS' ASSOCIATION LEGAL DEFENSE TRUST; TANYA CONRAD, individually and as an Agent of the Riverside Sheriffs Association, *Defendants*, <br><br> v. <br><br> WILLIAM NATHANIEL WOODSON, III, *Intervenor-Appellant.* | No. 13-56411 <br><br> D.C. No. 5:06-cv-01208-RHW-OP |

| | |
|---|---|
| SCOTT TEUTSCHER, an individual, *Plaintiff-Appellee*, | No. 13-56659 |
| | D.C. No. 5:06-cv-01208-RHW-OP |
| v. | |
| RIVERSIDE SHERIFFS' ASSOCIATION, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Robert H. Whaley, Senior District Judge, Presiding

Argued and Submitted January 5, 2016
Pasadena, California

Filed August 26, 2016

Before: Milan D. Smith, Jr., Paul J. Watford,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland
Concurrence by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Labor Law

The panel reversed the district court's award of front pay and reinstatement as equitable remedies under the Employee Retirement Income Security Act for a retaliatory discharge after the plaintiff had already sought and been awarded by a jury front pay damages to compensate for the same harm.

The plaintiff went to trial against his former employer on retaliatory discharge claims under both state law and ERISA. The jury awarded him lump-sum damages on his state law claims, and the district court then entered judgment on his ERISA claim. Even though the jury had been instructed to include front pay in its damages award, the district court granted the plaintiff additional equitable remedies consisting of reinstatement as well as front pay until reinstatement occurred.

The panel held that the equitable front pay award conflicted with the jury's front pay award in violation of the Seventh Amendment right to a jury trial. In addition, although the reinstatement remedy did not necessarily conflict with the fact findings implicit in the jury's verdict, it nevertheless was improper because the plaintiff waived that relief when he elected to seek the duplicative front pay remedy from the jury.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge M. Smith concurred in the judgment. However, he disagreed with the majority's Seventh Amendment analysis. Judge M. Smith would hold instead that the district court's equitable remedy was an abuse of discretion because the district court did not give reasons why additional equitable relief was appropriate after the jury had already compensated the plaintiff for the monetary harm he suffered.

## COUNSEL

Daniel P. Stevens (argued) and Heather K. McMillan, Stevens & McMillan, Tustin, California, for Plaintiff-Appellee.

Jon R. Williams (argued), Williams Iagmin LLP, San Diego, California, for Defendant-Appellee.

William N. Woodson, III (argued), Law Offices of Wm. N. Woodson, III APC, Fallbrook, California, pro se Intervenor-Appellant.

## OPINION

FRIEDLAND, Circuit Judge:

This appeal requires us to examine the limits on a district court's authority to award front pay and reinstatement as equitable remedies for a retaliatory discharge after a plaintiff has already sought and been awarded by a jury front pay damages to compensate for the same harm. Plaintiff-Appellee Scott Teutscher went to trial against his former employer, Riverside Sheriffs' Association ("RSA"), on

retaliatory discharge claims under both state law and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA").  A jury awarded him lump-sum damages on his state law claims, and the district court then entered judgment in his favor on his ERISA claim.  Even though, at Teutscher's request, the jury had been instructed to include front pay in its damages award, the district court granted Teutscher additional equitable remedies consisting of reinstatement as well as front pay until reinstatement occurred.  RSA appeals these equitable remedies, arguing that they conflict with the jury's front pay award in violation of the Seventh Amendment and improperly duplicate Teutscher's recovery from the jury.

Given the way in which the jury was instructed and the evidence presented at trial, the jury's verdict encompassed an implicit factual determination as to the entire amount of front pay to which Teutscher was entitled on account of his retaliatory discharge.  We hold that the district court's grant of an additional front pay remedy for the same harm disregarded that determination in violation of the Seventh Amendment right to a jury trial.  In addition, although the reinstatement remedy does not necessarily conflict with factual findings implicit in the jury's verdict, we hold that it is nevertheless improper because Teutscher waived that relief when he elected to seek the duplicative front pay remedy from the jury.  We accordingly reverse the district court's equitable awards.

## I.

Defendant-Appellant RSA is an organization that represents law enforcement employees in Riverside County,

California for collective bargaining purposes. RSA also administers the RSA Legal Defense Trust (the "Trust"), an ERISA-governed plan. The Trust provides legal defense services to RSA members in civil and criminal actions arising from incidents in the course of their employment. From 2002 until his termination in 2005, Plaintiff-Appellee Scott Teutscher worked on an at-will basis for RSA as the Trust's Legal Operations Manager. In that position, Teutscher was responsible for the Trust's day-to-day operations, including directing the work of staff members and investigating disciplinary violation claims against RSA members.

During Teutscher's tenure as Legal Operations Manager, the Trust began covering legal expenses for Deputy Sheriff Duane Winchell's defense in criminal and civil proceedings unrelated to Winchell's employment. Teutscher eventually started expressing concerns that the Trust's coverage of Winchell's defense costs was unlawful because it was disallowed by the Trust's governing plan documents. Teutscher later met with an officer in the Riverside Sheriff's Department and accused RSA's president and its executive director of improper coverage approvals. Shortly after Teutscher revealed that he had contacted law enforcement about the coverage issues, RSA's executive director terminated Teutscher's employment.

Teutscher filed the instant lawsuit alleging that RSA terminated him in retaliation for reporting his suspicions that the Trust's coverage of Winchell was illegal. In the operative complaint, Teutscher asserted claims against RSA under federal and California law arising out of his termination, including retaliatory discharge in violation of

section 510 of ERISA, 29 U.S.C. § 1140; wrongful discharge in violation of public policy under California common law; and retaliatory discharge in violation of California Labor Code §§ 98.6 and 1102.5. After this court partially reversed an earlier grant of summary judgment in favor of RSA, the case proceeded to a jury trial on the three state law claims pursuant to Teutscher's timely jury demand, and to a simultaneous bench trial on his ERISA claim.

During trial, Teutscher presented evidence that RSA's executives threatened to terminate him if he "didn't keep [his] mouth shut" about the Winchell coverage issues. He argued to the jury that the executives acted on that threat by firing him after he reported to outside authorities his suspicions that the coverage was illegal. RSA in turn presented evidence that Teutscher had made repeated mistakes in his job, which had led the Trust's Board to assign RSA's executive director to supervise Teutscher's work. RSA also introduced evidence that Teutscher had been investigated and disciplined for failing to follow Trust policy in responding to an officer-involved shooting incident, and that he was placed on administrative leave shortly before his termination for, among other things, angrily throwing a work file. Teutscher argued that these performance-related grievances were merely pretext for retaliation, and that they were belied by his consistently satisfactory job performance ratings and by a raise he received shortly before his termination.

Teutscher also put on testimony about wages he had lost since his termination and wages he would have earned for the remainder of his anticipated working life at RSA. Teutscher testified that, at the time of his termination, he had

been earning an $86,000 annual salary plus annual bonuses and the value of a company car. During closing arguments, his counsel placed the total value of compensation at $98,236 per year. Teutscher, who was 55 years old at the time of trial, testified that had he not been wrongfully terminated, he would have continued working at RSA until his Social Security "would kick in, probably 65, 67." Teutscher testified that he was instead forced to look elsewhere for work. After about six months, he found his first replacement job working at an auto business, earning roughly $8,000 per year in 2006 and 2007. In 2008, Teutscher began working at the San Bernardino County Sheriff's Department for an annual salary of roughly $42,000, which had increased to $52,000 by 2012.

The district court adopted Teutscher's proposed jury instruction on damages, and, without objection, instructed the jury on how to calculate Teutscher's damages should it find that he was wrongfully discharged. This instruction provided:

> If you decide that Plaintiff has proved that Defendant wrongfully terminated him, then you must decide the amount of damages that Plaintiff has proven he is entitled to recover, if any. To make that decision, you must:
>
> 1. Decide the amount that Plaintiff would have earned up to today, including any benefits and pay increases; and
>
> 2. Add the present cash value of any future wages and benefits that he would have earned for the length of time the

employment with Defendant was reasonably certain to continue; and

3. Add damages for pain, suffering and emotional distress if you find that Defendant's conduct was a substantial factor in causing that harm.

In determining the period that Plaintiff's employment was reasonably certain to have continued, you should consider such things as:

(a) Plaintiff's age, work performance, and intent regarding continuing employment with Defendant;

(b) Defendant's prospects for continuing the operations involving Plaintiff; and

(c) Any other factor that bears on how long Plaintiff would have continued to work.

The court also instructed the jury that "Plaintiff has a duty to use reasonable efforts to mitigate damages" and that the burden was on RSA to show that Teutscher had failed to do so.

Following deliberations, the jury returned a verdict in favor of Teutscher on his state law claims for wrongful and retaliatory discharge. Using a general verdict form to which neither party had objected, the jury awarded Teutscher lump-

sum damages of $457,250 and separately awarded punitive damages of $357,500.

Based on the evidence presented at trial, the district court adjudicated Teutscher's ERISA claim, holding RSA liable for retaliating against Teutscher in violation of section 510. The district court then heard argument on an appropriate ERISA remedy. Teutscher asked that his ERISA remedy include back pay and reinstatement. RSA objected that back pay was unavailable under ERISA as a form of compensatory relief. RSA also objected that reinstatement would conflict with the jury's award of lost future earnings and would constitute impermissible double recovery because Teutscher was already made whole by the remedy he elected to pursue from the jury. RSA further contended that reinstatement was impossible because of continuing acrimony between the parties.

The court issued a ruling denying back pay but ordering RSA to reinstate Teutscher and to provide him interim front pay at the rate of $98,235 per year until such reinstatement occurred. RSA filed objections to the court's ruling, protesting that it would be impossible to reinstate Teutscher because his position had by then been eliminated, and again arguing that the equitable front pay and reinstatement awards duplicated the relief Teutscher had obtained from the jury and that Teutscher waived his right to those equitable awards when he elected a make-whole remedy on his legal claims. The district court nevertheless entered judgment in accordance with its earlier ruling. RSA timely appealed the district court's remedy on the ERISA claim, arguing that it violated both the Seventh Amendment and the prohibition on double recovery.

## II.

We review for abuse of discretion the district court's award of equitable relief, including its grant of reinstatement and front pay. *See Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1156 (9th Cir. 1999). Under this framework, we must determine whether the district court based its ruling on an erroneous view of the law, *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc), or on a factual finding that was "illogical, implausible, or without support in inferences that may be drawn from the record," *id.* at 1262–63. *See United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir. 1984) (en banc), *recognized as abrogated on other grounds by Estate of Merchant v. Comm'r*, 947 F.2d 1390, 1392–93 (9th Cir. 1991).

## III.

RSA's central argument in this appeal is that the Seventh Amendment barred the district court from granting Teutscher equitable relief of reinstatement and interim front pay on his ERISA claim once the jury had determined the amount of front pay to which Teutscher was entitled on his state law claims. We accordingly begin by examining the strictures the Seventh Amendment imposes in cases tried both to a jury and to the court.

The Seventh Amendment provides that "[i]n Suits at common law, . . . the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. The Supreme Court "has construed this language to require a jury trial on

the merits in those actions that are analogous to 'Suits at common law'" at the time of the Amendment's ratification. *Tull v. United* States, 481 U.S. 412, 417 (1987); *see also* Fleming James, Jr., *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655, 655 (1963) (explaining that the Constitution "do[es] not extend but preserve[s] the right of jury trial as it existed . . . in 1791 when the seventh amendment was adopted"). Prior to 1791, "a jury trial was customary in suits brought in the English *law* courts" but not in the courts of equity, *Tull*, 481 U.S. at 417, "unless the chancellor in his discretion sent an issue to a jury for an advisory verdict," James, 72 Yale L.J. at 655. The Seventh Amendment thus secures the right to a jury trial for "suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Chauffeurs*, *Local 391 v. Terry*, 494 U.S. 558, 564 (1990) (alterations in original) (quoting *Parsons v. Bedford*, 28 U.S. 433, 447 (1830)).

Teutscher went to trial claiming that RSA had discharged him in retaliation for protected activity, in violation of California law and in violation of section 510 of ERISA. To determine whether a jury right exists on each of these causes of action, we look first to whether that action is analogous to one that was heard in English law courts "prior to the merger of the courts of law and equity," and second we "examine the remedy sought and determine whether it is legal or equitable in nature." *Tull*, 481 U.S. at 417–18. "The second inquiry is the more important in our analysis." *Chauffeurs*, 494 U.S. at 565; *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).

Teutscher's state law claims and his ERISA claim are legal in nature with respect to the right they protect. *See Spinelli v. Gaughan*, 12 F.3d 853, 857 (9th Cir. 1993) (categorizing retaliatory discharge—"a tort so widely accepted in American jurisdictions today . . . that it has become part of our evolving common law"—as legal in nature and analogizing an ERISA section 510 claim to that common law tort).

As to the more important factor—the nature of the remedies—the state law claims are legal and the ERISA claim is equitable. The actual and punitive damages Teutscher seeks for his state law claims are indisputably legal remedies because such damages are "the traditional form[s] of relief offered in the courts of law." *Curtis v. Loether*, 415 U.S. 189, 196 (1974). The remedies Teutscher seeks under section 510 of ERISA, in contrast, are exclusively equitable in nature. Section 510 is enforced solely through the remedies provided under section 502(a)(3), which authorizes an aggrieved plan participant or beneficiary to bring a civil action to enjoin an ERISA violation or "to obtain other appropriate equitable relief," 29 U.S.C. § 1132(a)(3). *See* 29 U.S.C. § 1140; *Spinelli*, 12 F.3d at 856; *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256–58 (1993) (holding that relief under section 502(a)(3) is limited to remedies traditionally available in equity, such as injunctions, mandamus, and restitution).

Because both the right in question and the remedies sought make Teutscher's state law claims legal in nature, and because Teutscher made a timely jury demand on those claims, he was entitled to have those claims tried to a jury. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 345 (1979)

(Rehnquist, J., dissenting) ("If a jury would have been impaneled in a particular kind of case in 1791, then the Seventh Amendment requires a jury trial today, if either party so desires."). But because of the wholly equitable nature of the available ERISA remedies, Teutscher's ERISA claim is categorized as equitable—meaning that he had no right to a jury trial on that claim. *See Spinelli*, 12 F.3d at 858.

The Supreme Court has explained how to comport with the Seventh Amendment when trying legal and equitable claims in the same action. In *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), the Court held that in cases in which legal and equitable claims turn on common issues of fact, "any legal issues for which a trial by jury is timely and properly demanded [must] be submitted to a jury," *id.* at 473 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11 (1959)), and the jury's determination of the legal claims must occur "prior to any final court determination of [the] equitable claims," *id.* at 479. Because the Seventh Amendment's second clause "prohibit[s] . . . the courts of the United States to re-examine any facts tried by a jury" except as permitted under the narrow "modes known to the common law," *Parsons*, 28 U.S. at 447–48, the court then must abide by the jury's findings of fact in making any subsequent rulings. *See Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991) (holding that "it would be a violation of the seventh amendment right to jury trial for the court to disregard a jury's finding of fact").

It follows that "in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and [those] claims are 'based on the same facts,'" the trial judge must

"follow the jury's implicit or explicit factual determinations" "in deciding the equitable claims." *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993) (quoting *Miller v. Fairchild Indus.*, 885 F.2d 498, 507 (9th Cir. 1989)). The trial court must do so in determining both liability and relief on the equitable claims. *See Miller*, 885 F.2d at 506–07 (holding that "the district court in deciding the Title VII [equitable] claim will be bound by all factual determinations made by the jury in deciding" the plaintiff's legal claims); *see also Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 966 (10th Cir. 2002) (holding that the trial judge impermissibly "disregarded the jury's implicit finding[s]" when the judge denied the wrongfully discharged plaintiff equitable relief of front pay for reasons inconsistent with the jury's findings); *EEOC v. Century Broad. Corp.*, 957 F.2d 1446, 1463 (7th Cir. 1992) ("[I]n deciding whether to grant equitable relief under Title VII, the district court [is] prohibited from reconsidering any issues necessarily and actually decided by the jury." (second alteration in original) (quoting *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 355 (7th Cir. 1987))). These constraints are "consistent with . . . the respect that properly is accorded to a jury verdict in our system of jurisprudence." *Miller*, 885 F.2d at 507.

## IV.

To determine whether the district court contravened these constitutional constraints, we evaluate whether Teutscher's state law and ERISA claims turn on common questions of fact, and, if they do, whether the court disregarded any factual determinations implicit in the jury's verdict when it awarded the equitable remedies.

## A.

The parties do not dispute that common questions of fact underlie the determination of liability on the state law and ERISA claims.[1] Teutscher's state law claims turn on his proving that RSA terminated his employment for disclosing suspected legal violations. *See, e.g.*, *Hager v. County of Los Angeles*, 176 Cal. Rptr. 3d 268, 275 (Cal. Ct. App. 2014) ("[S]ection 1102.5(b) protects an employee from retaliation by his employer for making a good faith disclosure of a violation of federal or state law."); *McVeigh v. Recology S.F.*, 152 Cal. Rptr. 3d 595, 619 (Cal. Ct. App. 2013) (recognizing a viable common law tort claim against an employer who violates the fundamental public policy prohibiting retaliatory discharge of an employee for whistleblowing). To establish a claim of retaliation under section 510, Teutscher likewise had to show that: (1) he

---

[1] The problem of conflicting legal and equitable awards (such as the legal front pay award and equitable reinstatement and front pay awards here) appears to arise rarely in the ERISA context because of ERISA's broad preemption provision. *See* 29 U.S.C. § 1144(a) (providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *Spinelli v. Gaughan*, 12 F.3d 853, 857 n.4 (9th Cir. 1993) (recognizing that ERISA preempts a claim for retaliatory discharge under Nevada law). RSA waived any preemption defense in this case by failing to assert preemption in the district court or in this court, and we decline to consider the issue sua sponte. *See Gilchrist v. Jim Slemons Imps., Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986) (explaining that an ERISA preemption defense "does not generally affect jurisdiction" and refusing to reach it for the first time on appeal); *see also Am. Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 354 (8th Cir. 2013) (declining to consider ERISA preemption sua sponte on appeal).

engaged in an activity protected under ERISA, (2) he suffered an adverse employment action, and (3) a causal link existed between his protected activity and RSA's adverse action. *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989). One such ERISA-protected activity is protesting a legal violation in connection with an ERISA-governed plan. *Hashimoto v. Bank of Haw.*, 999 F.2d 408, 411 (9th Cir. 1993); *see also* 29 U.S.C. § 1140 (making it unlawful to "discharge . . . any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to [ERISA]"). With respect to both the state law and ERISA claims, Teutscher endeavored at trial to show that his reporting the allegedly improper coverage of Winchell's legal expenses motivated his termination. By finding RSA liable on the state law claims, the jury implicitly found that Teutscher's protected activity motivated his discharge. Consistent with this finding, it was appropriate for the district court to enter judgment for Teutscher on his ERISA claim as well. Neither party suggests otherwise.

The more difficult question—and the one at issue in this case—is whether the court's ERISA *remedy* shares common questions of fact with the jury's damages calculation. To answer that question, we begin by evaluating the forms of relief available for violations of Teutscher's state law and ERISA claims.

Under California law, "[a] wrongfully discharged employee . . . is entitled to damages [that] tend to make him whole" and that "represent just compensation for the loss . . . sustained by the plaintiff." *Currieri v. City of Roseville*, 123 Cal. Rptr. 314, 319 (Cal. Ct. App. 1975); *see also* Cal.

Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."). One key component of economic loss is the income that the employee would have earned had she not been wrongfully discharged. *See Horsford v. Bd. of Trs. of Cal. State Univ.*, 33 Cal. Rptr. 3d 644, 666 (Cal. Ct. App. 2005). Compensatory damages under California law thus may include as "backpay" an award of "lost-wages damages through the time of trial," *id.*, and "as 'front pay' an award of the salary and benefits a wrongfully demoted or discharged plaintiff would have earned from employment after the trial," *Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 136 Cal. Rptr. 3d 259, 294 n.17 (Cal. Ct. App. 2012).[2] Because "California courts . . . treat[] front pay as a damage issue for the trier of fact," *id.*, a wrongfully discharged plaintiff is entitled to seek a front pay award from the jury to compensate for future lost earnings. Pursuant to California's pattern jury instructions, this front pay award should consist of "the present cash value of any future wages and benefits that [the plaintiff] would have earned for the length of time the employment with [the defendant] was reasonably certain

---

[2] In their briefs, the parties use terms like "lost future earnings" and "future lost earnings" interchangeably with "front pay." This is consistent with how front pay is defined by the California courts. *See, e.g.*, *Horsford*, 33 Cal. Rptr. 3d at 665–66 (defining "front pay" as "a measure of damages for loss of future income" and classifying "loss or future loss of earnings" as a form of "economic damages").

to continue." CACI No. 2433 ("Wrongful Discharge in Violation of Public Policy—Damages").

Although ERISA section 510 does not provide compensatory damages, *Concha v. London*, 62 F.3d 1493, 1504 (9th Cir. 1995), it does provide prospective relief for an employee who suffered retaliatory discharge by giving courts the equitable authority to reinstate the employee to her former position. *See McBride v. PLM Int'l, Inc.*, 179 F.3d 737, 744 (9th Cir. 1999) (holding that an ERISA-plan participant had standing to sue under section 510 for reinstatement to his former position); *see also McLeod v. Or. Lithoprint Inc.*, 102 F.3d 376, 379 (9th Cir. 1996) (providing that reinstatement is "equitable, not compensatory, relief" for purposes of ERISA section 502(a)(3)).**[3]** There will be times, however, when reinstatement, though deserved, is not feasible, either because "it is impossible to reinstate the plaintiff or [because] it would be inappropriate due to excessive hostility or antagonism between the parties." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1137 (9th Cir.

---

**[3]** There is a circuit split on whether "back pay" is also available as an equitable remedy under section 502(a)(3) of ERISA to restore a plaintiff to the position she would have enjoyed but for the employer's illegal retaliation. *Compare Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1259–60 (10th Cir. 2004) (holding that back pay is unavailable for employees discharged in violation of section 510 because it is legal rather than equitable in nature), *with Schwartz v. Gregori*, 45 F.3d 1017, 1022–23 (6th Cir. 1995) (holding that back pay is a restitutionary award available under section 502(a)(3)). The district court in this case held that back pay is unavailable under ERISA. Because Teutscher has not appealed that decision, we do not reach that issue here.

1986).  To account for such situations, we have held in other employment-related statutory contexts that "front pay" may be awarded in equity as a substitute when the preferred remedy of reinstatement is unavailable or imprudent.[4]  *See, e.g.*, *Traxler v. Multnomah County*, 596 F.3d 1007, 1011–12 (9th Cir. 2010) (providing in a Family Medical Leave Act case that front pay is available only when "reinstatement is inappropriate, such as where no position is available or the employer-employee relationship has been so damaged by animosity that reinstatement is impracticable"); *Thorne*, 802 F.2d at 1137 (recognizing that front pay may be available as a remedy under Title VII in lieu of reinstatement).[5]

---

[4] At least one of our sister circuits has held that section 502(a)(3) of ERISA permits an award of front pay "when the preferred remedy of reinstatement . . . is not appropriate or feasible."  *Schwartz*, 45 F.3d at 1023.  Neither party to this action contests that front pay is an available remedy for a violation of section 510 in a case asserting only such a violation, and we therefore assume without deciding that front pay is an equitable remedy authorized under section 502(a)(3).

[5] Federal court decisions characterizing front pay as an equitable remedy under several federal employment statutes have not altered its characterization as a legal remedy under state law.  California courts have continued to classify front pay as a "damage issue for the trier of fact" even while recognizing that front pay is treated as an equitable remedy under certain federal statutes.  *Mize-Kurzman*, 136 Cal. Rptr. 3d at 294 n.17.  And we have upheld jury awards of front pay where state law provides for that remedy as a form of legal relief.  *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 512 (9th Cir. 2000) (explaining that "[u]nder Washington law the jury has substantial autonomy when awarding front pay"); *Boehm v. Am. Broad. Co.*,

The district court in this case crafted a hybrid remedy for Teutscher's section 510 claim, awarding reinstatement as well as interim front pay at Teutscher's full former salary until reinstatement occurred. We must determine whether, in granting either front pay or reinstatement, the district court contravened the findings of fact implicit in the jury's damages verdict. We consider each remedy in turn.

## B.

RSA argues that the jury's determination of Teutscher's entitlement to front pay as a remedy for his state law claims foreclosed the district court from granting front pay on Teutscher's ERISA claim. We agree.

Not only is front pay available both in law under Teutscher's state law claims and in equity under section 510 of ERISA, as explained above, but in order to obtain either remedy, Teutscher needed to make the same factual showing and to meet the same defenses. The district court consequently should have viewed itself as bound under the Seventh Amendment to respect the jury's findings on front pay when considering Teutscher's request for a front pay award under ERISA.

California law and federal law both treat "front pay [a]s an award of future lost earnings to make a victim of discrimination whole." *Cassino v. Reichhold Chems.*, *Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1987); *see also Horsford*,

---

929 F.2d 482, 488 (9th Cir. 1991) (affirming jury's front pay award under California wrongful discharge claims).

33 Cal. Rptr. 3d at 666 (defining front pay as "a measure of damages for loss of future income"). And both require a wrongfully discharged plaintiff to make reasonable efforts to mitigate an employer's damages by seeking suitable alternative employment. *See, e.g.*, *Cassino*, 817 F.2d at 1345 ("An [Age Discrimination in Employment Act] plaintiff must attempt to mitigate damages by exercising reasonable care and diligence in seeking reemployment after termination."); *Cal. Sch. Emps. Ass'n v. Pers. Comm'n*, 106 Cal. Rptr. 283, 286 (Cal. Ct. App. 1973) ("The discharged employee . . . generally has a duty to mitigate his damage[s] by seeking other employment through the exercise of reasonable diligence."). Thus, under both federal and California law, front pay awards must be reduced by the amount that the defendant shows the wrongfully discharged employee "could earn using reasonable mitigation efforts." *Cassino*, 817 F.2d at 1347; *see Parker v. Twentieth Century-Fox Film Corp.*, 474 P.2d 689, 692 (Cal. 1970) (in bank) (setting forth the "general rule" under California law that a wrongfully discharged plaintiff's recovery is subject to mitigation).[6]

---

[6] In *Cassino*, the district court submitted the front pay issue to a jury. 817 F.2d at 1347. Discussing why this had occurred in *Cassino*, we clarified in *Traxler* that "[a] trial court, sitting in equity, may . . . employ an advisory jury" to determine the amount of front pay even though there is no right to have a jury determine the issue. *Traxler*, 596 F.3d at 1013. Neither *Cassino* nor *Traxler* addressed the limitations on a district court's discretion to award equitable relief where front pay is submitted to the jury as of right, rather than in an advisory capacity.

It is clear then that a legal front pay award under California law turns on the same issues of fact as an equitable front pay award under section 510 of ERISA: the salary an employee was reasonably certain to have earned but for his wrongful discharge, the period over which he would have earned that salary, and the amount by which the defendant showed the employee could mitigate his losses by securing suitable alternative employment.[7]

Accordingly, the jury instruction on damages given in this case directed the jury to determine the exact issues that also would be relevant to the district court's determination of any equitable front pay award. Specifically, the district court instructed the jury to include in its award "the present cash value of any future wages and benefits that [Teutscher] would have earned for the length of time the employment

---

[7] The concurrence suggests that the Supreme Court in *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001), set forth a "technical distinction" between legal and equitable front pay, which governs here. We disagree. *Pollard* answered the narrow question whether an award of front pay in lieu of reinstatement was authorized under section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g)(1), or whether it "constitute[d] an element of 'compensatory damages' under 42 U.S.C. § 1981a and thus [was] subject to the statutory damages cap imposed by that section." 532 U.S. at 846. The Court's holding that front pay was excluded from the statutory cap turned on the specific statutory language at issue and its legislative history. *Id.* at 852–54. Nowhere in *Pollard* did the Supreme Court hold that front pay cannot be awarded by a jury as a legal remedy for a state-law cause of action. Nor did *Pollard* address Seventh Amendment constraints on a district court's award of front pay in equity when a jury has determined the factual issues relevant to such an award.

with [RSA] was reasonably certain to continue," discounted by any amount that RSA affirmatively proved Teutscher could earn through reasonable efforts.[8] This is precisely the inquiry that a district court would conduct to determine an appropriate award of front pay in equity under a federal employment statute.[9]

The district court also instructed the jury on the factors it should take into account to determine the "period that [Teutscher's] employment was reasonably certain to have continued," such as his "age, work performance, and intent regarding continuing employment with [RSA];" "[RSA's] prospects for continuing the operations involving [Teutscher];" and "[a]ny other factor that bears on how long [Teutscher] would have continued to work." These are the same factors considered by district courts acting in equity. *See Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (identifying factors to consider for determining an equitable

---

[8] Although the district court's mitigation instruction was not a model of clarity, Teutscher concedes that it made sufficiently clear to the jury that front pay was subject to mitigation such that the jury could have awarded zero front pay on that basis alone.

[9] The concurrence suggests that the qualifier "appropriate" in the phrase "appropriate equitable relief" in ERISA, 29 U.S.C. § 1132(a)(3), gives courts leeway to consider additional factors in determining whether to grant an equitable front pay award and the size of any such award. But the concurrence does not identify any factors that the district court here would have considered beyond those it instructed the jury to consider. Of course, neither the jury—which must follow its instructions on the law in determining liability and damages, *see Opper v. United States*, 348 U.S. 84, 95 (1954)—nor the district court may award *in*appropriate relief.

award of front pay as "(1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship"); *see also Traxler*, 596 F.3d at 1014 (approving of the district court's consideration of the plaintiff's age, job skills, and work-life expectancy to determine a front pay award); *Schwartz*, 45 F.3d at 1023 ("In determining the amount of front pay, a district court is to consider a number of factors, including the employee's work life expectancy," and it may also take into account whether the employee was at-will.).

To prove up his front pay damages as required by the jury instruction, Teutscher testified that he would have continued working at RSA at his 2005 salary until retiring at around age sixty-seven. Teutscher also presented mitigation evidence about his efforts to obtain a replacement job after his discharge (including that he "[w]ent on the Internet" to find work), and about the salary that he earned through his post-termination employment at an auto shop and at the San Bernardino County Sheriff's Department. The jury additionally heard evidence that, almost a year before Teutscher was discharged, RSA assigned an administrator to "t[ake] over the legal operations" formerly handled by Teutscher. The jury thus had all the tools it needed to determine Teutscher's entitlement to front pay, and it must be presumed that the jury followed its instructions and awarded Teutscher all the lost future income supported by the evidence. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). The jury's finding as to Teutscher's entire entitlement to

front pay—taking into account his age, his work-life expectancy, the likelihood of RSA's maintaining his former position, his reasonable mitigation ability, etc.—is implicit in its award of $457,250 in compensatory damages. And the district court was bound by this determination in crafting any subsequent equitable relief.[10]

It appears that the district court failed to consider, however, the factual determinations implicit in the jury's verdict in awarding equitable front pay. When it ordered RSA to pay Teutscher $98,235 per year in front pay until reinstating him, the district court impermissibly concluded that Teutscher was entitled to $98,235 per year more in front pay than the jury had found and awarded. The Seventh

---

[10] We agree with the concurrence that the jury's award of other non-economic damages—such as those compensating for injury to Teutscher's character and reputation—would not preclude the district court from awarding equitable front pay. This occurred in *Williams v. Pharmacia, Inc.*, 137 F.3d 944 (7th Cir. 1998), in which, as we discuss in Part VI *infra*, the Seventh Circuit determined that the jury's award of "lost future earnings" to compensate for injury to a discharged employee's "professional standing," "character[,] and reputation" did not overlap with the district court's award of front pay in equity under Title VII. *Id.* at 952–54. If the jury here had been instructed to award only the sort of "lost future earnings" at issue in *Williams*, we would agree that there would be no Seventh Amendment obstacle to an award of front pay in equity. But that is not what happened in this case. The jury instead was instructed to award exactly the same relief that the district court sought to award in equity: wages and benefits that Teutscher would have earned at RSA during the time that he was reasonably certain to have remained at RSA but for the retaliatory termination, subject to mitigation. Once the jury made those factual determinations, the district court could not disregard them by making contrary determinations in equity.

Amendment does not permit the jury's findings to be cast aside in this manner. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1475 (9th Cir. 1993) (holding that "the district court erred in engaging in factfinding contrary to the implicit findings of the jury verdict" and reversing the district court's order on equitable relief for that reason).

Teutscher endeavors to overcome Seventh Amendment barriers by attempting to parse the jury's lump-sum award to show that the jury did not actually grant him any front pay damages, and then to argue based on this parsing that the district court remained free to order those damages in equity. Teutscher rests this argument on the fact that the $457,250 in total damages awarded by the jury was less than the $491,339 in back pay damages that Teutscher sought. As such, he contends that because the jury did not even award him the entirety of his back pay demand, it could not possibly have awarded him any amount in front pay.

We reject this argument for several reasons. First, the lump-sum format of the jury's verdict prevents us from ascertaining the relative amounts of back pay and front pay that the jury awarded. *See Squires v. Bonser*, 54 F.3d 168, 176 (3d Cir. 1995) (recognizing that "it may not be possible . . . to isolate the front-pay award since the jury awarded a lump-sum amount for compensatory damages"). Teutscher asked the jury to award him back pay, front pay, and emotional distress damages, and Teutscher did not object to the lump-sum verdict form for doing so. The jury ruled in his favor, and because the lump-sum format does not enable us to parse which portion was front pay, we must assume that the jury awarded all of the front pay to which it believed Teutscher was entitled. Indeed, because he agreed to the

lump-sum verdict form, Teutscher waived any argument that the jury's verdict should or could be parsed between its compensatory components, and because he did not appeal the jury's damages award, Teutscher waived any argument that the verdict was flawed because it did not include front pay. He also fails to provide any authority for the proposition that the jury must award the entire amount of back pay requested before it can grant front pay, and, critically, the jury was not instructed here that it had to do so. It is thus entirely possible that the damages award included a substantial front pay component.

Moreover, even if we could parse the jury award—which we cannot—it is irrelevant whether the jury actually included any front pay within its damages award, because an award of zero front pay would also bind the district court in its determination of equitable relief. Whether the jury awarded some amount in front pay or no front pay, it necessarily made a finding, at Teutscher's request, on the total amount of front pay to which Teutscher was entitled. Because "the verdict in [this] suit could not have been rendered without deciding [this] matter," the jury's verdict on Teutscher's entire entitlement to front pay over the course of his remaining working years was "conclusive." *Russell v. Place*, 94 U.S. 606, 608–09 (1876). The district court's decision to then award an additional front pay remedy disregarded the jury's finding as to the entire amount of future compensation that would make Teutscher whole.

## C.

The Seventh Amendment analysis leads to a different conclusion with respect to the reinstatement award. Even

though reinstatement compensates for the same harm as front pay, some of the factors that underlie an equitable reinstatement determination differ from those that underlie a legal front pay determination. Because these factors are only partially overlapping, some interpretations of the jury's award here would conflict with a reinstatement award but others would not. And because Seventh Amendment doctrine allows a court to interpret a jury's award in deciding whether it would conflict with an equitable award, the possibility of a non-conflicting interpretation means the Seventh Amendment does not necessarily bar the reinstatement award.

The factors that determine whether a reinstatement award is appropriate include whether "excessive hostility or antagonism between the parties" renders reinstatement practically infeasible, *Thorne*, 802 F.2d at 1137, and whether there is a position available to reinstate the employee to without unfairly causing the displacement of another employee. *Cassino*, 817 F.2d at 1346 ("Although reinstatement is the preferred remedy [for discriminatory discharge], it may not be feasible where the relationship is hostile or no position is available due to a reduction in force."); *see also Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007) (Factors to be considered in deciding the propriety of reinstatement include "whether positions now exist comparable to the plaintiff's former position and whether reinstatement would require an employer to displace an existing employee."). The second of these factors has a clear analog in the front pay calculus, which turns in part on the permanency of the position that was held by the plaintiff and the possibility that his position would have been eliminated through consolidation for a non-

retaliatory reason. *See Downey*, 510 F.3d at 544. The jury in this case was told to consider RSA's "prospects for continuing the operations involving [Teutscher]." And it could have inferred from the increasing supervision and reassignment of Teutscher's work that his position would eventually have been eliminated irrespective of his protected activity, such as through consolidation or a reduction in the work force, or through the reassignment of his duties to a lawyer.[11] Had the jury expressly found that a position for Teutscher would no longer exist at RSA by the time the trial concluded, and therefore awarded zero front pay on that basis, that finding could preclude the district court from ordering reinstatement.

By contrast, other factors considered by the jury in determining front pay have no bearing on the appropriateness of reinstatement. For instance, in awarding front pay, the jury was instructed to consider Teutscher's ability to mitigate his losses. But ability-to-mitigate is not a defense to reinstatement. Thus, if the jury decided to award no front pay on the basis that it believed Teutscher could obtain a job that paid as much as his job at RSA, that finding

---

[11] RSA's executive director testified that Teutscher's work needed to be performed "by a lawyer" who could better understand the issues and "make informed decision[s]." Teutscher is not a lawyer, and, indeed, according to evidence submitted by RSA after trial, Teutscher's position was eliminated in 2009, with the duties formerly assigned to Teutscher being transferred to outside counsel.

would not be incompatible with any finding necessary to award equitable reinstatement.

Nothing in the evidence presented at trial allows us to definitively rule out the possibility that the jury denied Teutscher front pay because it believed Teutscher could have obtained a job in the future that paid the same as his former position at RSA.[12] As a consequence, it is unclear in this case whether the jury's front pay decision turned on a factor—such as the expected elimination of any position Teutscher might fill—that would preclude a reinstatement remedy, or instead on a factor—such as Teutscher's failure to fully mitigate—that would not. When, as in this case, the basis for the jury's verdict is open to multiple interpretations, the Seventh Amendment permits the district court to reach

---

[12] Although we cannot definitively rule it out, it seems highly unlikely that the jury awarded Teutscher nothing in front pay due solely to his failure to mitigate future losses. Failure to mitigate is also a defense to a back pay claim. *See Cordero-Sacks v. Hous. Auth. of City of L.A.*, 134 Cal. Rptr. 3d 883, 896–98 (Cal. Ct. App. 2011) (affirming jury instruction on plaintiff's duty to mitigate her back pay damages). If the jury believed Teutscher had the ability to mitigate by finding a job that paid the same as his job at RSA, that should have caused the jury to award zero back pay (or zero back pay from the time such a job was available) as well as zero front pay. But of course the jury awarded $457,250 in compensatory damages—not zero. Perhaps the jury did award zero back pay and zero front pay because of failure to mitigate, and the entire $457,250 was intended to compensate for emotional distress. Even though this situation seems highly unlikely given that Teutscher's counsel argued to the jury that emotional distress damages are ordinarily tethered to monetary loss, the fact that we cannot rule it out precludes us from holding that the jury's verdict necessarily conflicts with a reinstatement award.

any interpretation that is supported by the evidence. *See Miles v. Indiana*, 387 F.3d 591, 600 (7th Cir. 2004) (explaining that "when several issues have been litigated, and the jury may have supported its verdict by finding in the plaintiff's favor on any one of the issues but which one is not clear, the court is free to determine the basis of the jury's verdict unless extrinsic evidence clearly resolves the issue"). The district court must then, of course, avoid contradicting the findings implicit in its interpretation of the verdict when it acts in equity, but it need not avoid conflicting with other interpretations of the verdict.

The Seventh Circuit's decision in *Miles* is instructive on the leeway that the Seventh Amendment provides a district court when the jury's verdict is ambiguous. In *Miles*, the plaintiff filed suit alleging that the defendants retaliated against him by transferring him to a position without supervisory responsibilities and by refusing to promote him to a managerial role. *See* 387 F.3d at 595–96. After the jury returned a verdict in the plaintiff's favor on the retaliation claim generally, the plaintiff requested equitable relief of promotion or front pay from the district court but was denied both. *See id.* at 597–98. In considering on appeal whether the denial of that equitable relief conflicted with the jury's verdict, the Seventh Circuit was faced with a situation, much like that presented here, in which the jury's verdict could be interpreted in multiple fashions. Specifically, the jury had answered in the affirmative a special verdict inquiry that asked whether the plaintiff had "proven that his complaints of discrimination were . . . a motivating factor in the decision of the defendant . . . to transfer him . . . or fail to promote him." *Id.* at 600. In light of the phrasing of the inquiry, the verdict could be read in one of three ways: the jury could

have found retaliation in the transfer, retaliation in the failure to promote, or retaliation in both. *Id.* "Acknowledging the ambiguity in the jury's verdict," the district court determined, based on the evidence presented at trial, that the retaliation suffered by the plaintiff was with respect to the transfer and not the failure to promote. *Id.* at 600–01; *see also id.* at 597–98. It then awarded equitable relief consistent with that interpretation, ordering the defendants to reassign the plaintiff to a position with supervisory duties similar to what he held before the retaliatory transfer. *Id.* at 598.

The Seventh Circuit affirmed, explaining that the district court did not contravene the jury's findings of fact. Rather, because "each of the potential theories supporting the verdict [was] open to contention," *id.* at 600, the district court was free to select the one that it found to be best supported by the evidence and to determine equitable relief in accord with that theory. The Seventh Circuit explained that "if the jury had found retaliation in failing to promote . . . , then the provision of supervisory duties alone would not make [the plaintiff] whole" and the district court's denial of promotion or front pay would have contravened the jury's findings. *Id.* But because retaliatory transfer was a permissible interpretation of the jury's verdict, the denial of these remedies and the award of supervisory duties instead was entirely in keeping with the jury's factual findings. *See id.* ("If the jury only found retaliation in the reassignment to a position that lacked any supervisory responsibility then providing equitable relief of supervisory responsibility would make [the plaintiff] whole without the need for either a promotion or front pay.").

The district court in this case likewise could have determined the basis of the jury's verdict in order to shape corresponding equitable relief.  Had the district court permissibly discerned that the jury's verdict reflected a finding that Teutscher failed to mitigate his future losses in that Teutscher should have been able to obtain a job as remunerative as his position at RSA by the time trial took place, the district court would have committed no Seventh Amendment error in proceeding to grant reinstatement. However, unlike in *Miles*, 387 F.3d at 600–01, the district court here did not explicitly determine the basis for the jury's verdict or how it comported with the equitable awards. Instead, the district court cursorily awarded reinstatement, stating only that it would "not assume an antagonistic relationship between [Teutscher] and RSA merely because of the protracted litigation."

Because of this lack of explanation, a remand would ordinarily be required to permit the district court to evaluate the jury's verdict in the first instance and to award reinstatement only if it could explain why doing so did not conflict with the district court's interpretation of the theory underlying the jury's verdict. *Cf. Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 913 (10th Cir. 2004) (reversing and remanding equitable award because the district court's "findings [we]re insufficient to enable . . . evaluat[ion] [of] whether the [court] abused its discretion by basing its equitable remedy on findings of fact that conflict with those implied by [the] jury verdicts"). We decline to remand here, however, because we conclude, as explained below, that even if reinstatement does not strictly speaking conflict with

the jury's implicit findings, the reinstatement remedy was improper for other reasons.**[13]**

# V.

RSA argues that the district court erred in ordering reinstatement because of its potential overlap with Teutscher's damages award and because Teutscher waived reinstatement when he elected to seek front pay from the jury.  We agree.

The Seventh Amendment is not the only limit on a district court's discretion to shape appropriate equitable relief: a district court must also avoid awarding a litigant double recovery for the same harm.  *See Selgas v. Am. Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir. 1997) (explaining that a district court's discretion to craft an equitable remedy is limited by the need "to avoid duplication").  That is, even if a district court when acting in equity avoids any direct conflict with a jury's factual findings, its award may still overlap with the damages granted by the jury and so provide the plaintiff a windfall.  The doctrine of double recovery is concerned with this latter problem.  This doctrine "dictates that 'in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered.'  The

---

**[13]** The concurrence suggests that we are reversing the reinstatement remedy under the Seventh Amendment.  We are not doing so.  Rather, after identifying an ambiguity that would require a remand to determine whether there is a Seventh Amendment violation as to reinstatement, we are reversing instead of remanding in order to avoid the double recovery and election-of-remedies problems explained in the next Part of this opinion.

animating principle is simple: when a plaintiff seeks compensation for wrongs committed against him, he should be made whole for his injuries, not enriched." *Medina v. District of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011) (citation omitted) (quoting *Kassman v. Am. Univ.*, 546 F.2d 1029, 1033 (D.C. Cir. 1976) (per curiam)); *see Dopp v. HTP Corp.*, 947 F.2d 506, 517 (1st Cir. 1991) ("[T]he law abhors duplicative recoveries.  That is to say, a plaintiff who is injured by reason of a defendant's behavior is . . . entitled to be made whole—not to be enriched.").  Thus, if a plaintiff brings two causes of action—one state and one federal—that arise from the same operative facts and seek relief for the same harm, the trial court must assure that the plaintiff recovers only once.  *Cf. Medina*, 643 F.3d at 326 (explaining that "a jury is not prohibited from allocating a single damages award between two distinct theories of liability," only from awarding it twice).

The question here is whether Teutscher was unjustly enriched by being granted reinstatement and compensatory damages as relief for the same retaliatory discharge.  To the extent that the damages award included a front pay component covering the same period during which Teutscher would be reinstated, he clearly was.

Reinstatement and front pay are alternative remedies, which cannot be awarded for the same period of time.  *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) (defining "front pay" as "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement"); *Smith v. World Ins. Co.*, 38 F.3d 1456, 1466 (8th Cir. 1994) ("Front pay may be awarded in lieu of, but not in addition, to reinstatement.");

*Morgan v. Ark. Gazette*, 897 F.2d 945, 954 (8th Cir. 1990) ("Having been granted reinstatement, [the plaintiff] cannot also receive an award of front pay."); *cf. Rogers v. Davis*, 34 Cal. Rptr. 2d 716, 719 (Cal. Ct. App. 1994) (explaining that under California law, a plaintiff may request alternative remedies, "but may not be awarded both to the extent such an award would constitute a double recovery"). This is because front pay is the "monetary equivalent" of reinstatement. *Traxler v. Multnomah County*, 596 F.3d 1007, 1012 (9th Cir. 2010) (quoting *Pollard*, 532 U.S. at 853 n.3). A reinstated individual will earn the salary associated with the job in question, so a plaintiff granted both front pay (calculated based on the job's salary) and reinstatement for the same time period would essentially obtain his salary twice over, earning an undue windfall.

Duplicative recovery is easily avoided when only equitable relief is at issue—the district court may craft an award comprising exclusively reinstatement, exclusively front pay, or interim front pay until reinstatement occurs. The same avoidance must be achieved when, as in this case, front pay is submitted to the jury to determine. *See Squires*, 54 F.3d at 176 ("It is true that if front-pay was awarded [by the jury], a grant of reinstatement would raise concerns regarding double recovery."); *Selgas*, 104 F.3d at 13–14 (recognizing that the district court may not award reinstatement that overlaps with the jury's front pay award).

Teutscher argues that there was no overlap in this case because it is clear from the size of the jury's verdict that it did not grant him any front pay. Thus, in his view, the district court could order reinstatement without duplicating his recovery. But Teutscher again ignores the problem

created by his failure to object to the lump-sum verdict form used by the jury, which prevents us from parsing the award. As explained above, we have no way of knowing that Teutscher is correct in assuming the jury awarded zero front pay, and there are many possible explanations of the jury verdict that would contain a front pay component. For example, the jury may well have decided that, with reasonable effort, Teutscher should have been able to find more remunerative work than his two-year stint at an auto business, and it may have declined to award him a substantial portion of his back pay request, instead apportioning damages across both back and front pay. Simply stated, nothing about the jury instructions or the evidence presented at trial permits us to conclude that the jury's damages award and the court's reinstatement award do not overlap. *Cf. Selgas*, 104 F.3d at 13–14 & n.9 (concluding that a reinstatement remedy did not overlap with front pay awarded by the jury because it was clear from the jury instructions and the evidence presented at trial that the jury was only permitted to determine front pay for an interim period until the point that the plaintiff could be reinstated).

The question remains what to do about this potential overlap. Faced with a similar problem of potentially duplicative legal and equitable awards, the Third and Eighth Circuits decided to remand for a new determination of remedies. *See Squires*, 54 F.3d at 176–77 & n.16 (vacating the jury's award in favor of a new trial on compensatory damages with more precise instructions); *Savarese v. Agriss*, 883 F.2d 1194, 1205–06 (3d Cir. 1989) (vacating potentially overlapping compensatory damages award and equitable back pay award and remanding for a new trial and recalculation of back pay by the district judge); *Greminger*

*v. Seaborne*, 584 F.2d 275, 278–79 (8th Cir. 1978) (vacating the jury's monetary judgment and remanding for the district court to determine an award of back pay and out-of-pocket expenses that would not conflict with its equitable reinstatement remedy). We think the better course on this record is to simply reverse the equitable reinstatement award and permit Teutscher to keep the full amount of damages he obtained from the jury.

Teutscher's own litigation choices are what lead us to this conclusion. On the record before us, it is evident that Teutscher waived his right to a reinstatement award when he affirmatively elected to seek front pay from the jury. The election-of-remedies doctrine, which "refers to situations where an individual pursues remedies that are legally or factually inconsistent," operates to "prevent[] a party from obtaining double redress for a single wrong." *Latman v. Burdette*, 366 F.3d 774, 781–82 (9th Cir. 2004) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49 (1974)), *abrogated on other grounds by Law v. Siegel*, 134 S. Ct. 1188 (2014). A party is bound by his election of remedies if three conditions are met: "(1) two or more remedies . . . existed at the time of the election, (2) these remedies [are] repugnant and inconsistent with each other, and (3) the party to be bound . . . affirmatively chose[], or elected, between the available remedies." *Id.* at 782 (citing 25 Am. Jur. 2d *Election of Remedies* § 8).[14]

---

[14] We have in the past cautioned against overreliance on the election-of-remedies doctrine. *See Haphey v. Linn County*, 953 F.2d 549, 552

Each of these conditions is met here. As explained above, reinstatement and front pay are alternative remedies for retaliatory discharge, which cannot both be awarded for the same period of time. *See, e.g., Pollard*, 532 U.S. at 846. Teutscher proposed the damages instruction that required the jury to determine the amount of compensation he would have earned for the remainder of his working life at RSA, and he did not object when the jury was charged to include front pay damages in its lump-sum verdict. Teutscher therefore elected to seek a make-whole remedy from the jury, which necessarily included a front pay award for the entire period covered by any potential reinstatement award.

In sum, having submitted front pay to the jury in the manner that he did, Teutscher could not then take a second bite at the apple by seeking a duplicative reinstatement

---

(9th Cir. 1992) (en banc) (explaining that, rather than relying on election-of-remedies principles, "state claim and issue preclusion rules should normally be employed when courts are considering whether utilization of state court proceedings prevents later utilization of federal proceedings"). While we believe the procedural history of this case squarely implicates the election-of-remedies doctrine, we do not intend to suggest anything about the applicability of the doctrine in other contexts. *See Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 572–73 (9th Cir. 1973) (providing that election of remedies applies "only where conflicting and inconsistent remedies are sought on the basis of conflicting and inconsistent rights" and holding that the plaintiff's use of union arbitration did not bar his Title VII claim (quoting *Newman v. Avco Corp.*, 451 F.2d 743, 746 n.1 (6th Cir. 1971))).

award from the court.[15] *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1103 & n.17 (3d Cir. 1995) (noting in support of its decision that reinstatement was inappropriate that the plaintiff "failed to object when the trial judge instructed the jury on front pay, even though he intended to make a motion for reinstatement"). We therefore conclude that Teutscher is entitled to keep the full amount of compensatory (and punitive) damages the jury awarded, but that the district court's equitable reinstatement award must be set aside.

## VI.

As a final note, we emphasize that our holding that the jury's monetary award precluded the district court's equitable award in this case turns on the particular way in which Teutscher chose to pursue his claims. As the "'master' of his complaint," Teutscher was entitled to decide what law to rely on and what remedies to pursue. *Ultramar Am. Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990). There are several ways in which Teutscher likely could have pursued legal and equitable relief at the same time. Among them, he could have pursued only back pay from the jury and

---

[15] RSA argues that the district court additionally erred by failing to consider Teutscher's duty to mitigate when it awarded him front pay at Teutscher's full former salary, and that it erred in ordering reinstatement and interim front pay without making the requisite finding that it was possible to return Teutscher to the same or a similar position. Because we conclude that both the equitable reinstatement and front pay awards must be vacated for other reasons, we do not reach these issues.

sought a forward-looking remedy only from the court in equity.[16] Alternatively, Teutscher could have requested that the jury be instructed to award only that prospective compensatory relief that did not overlap with an equitable reinstatement or front pay remedy.

Such was the case, for instance, in *Williams v. Pharmacia, Inc.*, 137 F.3d 944 (7th Cir. 1998). There, the jury was instructed to award "lost future earnings" to compensate the plaintiff only for the reputational harms she suffered as a result of the defendant's discrimination, which diminished her lifetime earnings capacity generally. *Id.* at 952 (explaining that the district court "characterized the jury's award for lost future earnings as 'an intangible nonpecuniary loss'" and "analogized lost future earnings to an 'injury to professional standing' and to 'injury to character and reputation'"). To prove up this request, the plaintiff presented expert testimony about the way in which her undeservedly poor performance evaluations diminished her future earnings capacity. *See id.* Rather than compensating for this diminished capacity, an equitable

---

[16] Had Teutscher done so, the question of equitable front pay could perhaps have been tried to the district court with an advisory jury as long as that choice was clear to the parties in advance, so that the district court would be guided by the jury's non-binding front pay finding should reinstatement prove infeasible. *See Traxler v. Multnomah County*, 596 F.3d 1007, 1013 (9th Cir. 2010) (explaining that "[a] trial court, sitting in equity, may nevertheless employ an advisory jury" though "[t]he ultimate decision . . . rests with the court"); *see also Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981) ("The parties are entitled to know at the outset of the trial whether the decision will be made by the judge or the jury.").

front pay award granted by the court compensated the plaintiff for the immediate pecuniary "effects of [the defendant's] unlawful termination of her employment" in an amount "approximat[ing] the benefit [the plaintiff] would have received had she been able to return to her old job"— an amount that was capped at a year of wages because her position would have been eliminated after a year due to merger. *Id.* at 953. As a consequence, the jury's lost future earnings award avoided overlap with the court's equitable remedy of one year of front pay, *see id.* at 954, and the jury's finding about the plaintiff's lost future earnings capacity thus did not preclude the district court from granting additional relief to compensate her for lost wages during her period of unemployment.[17] *See id.* at 953 (explaining that even if

---

[17] To the extent the lost future wages award in *Williams* may also have included some monetary component for the year in which the plaintiff received front pay, this is explainable by the particular facts of that case. In *Williams*, the plaintiff presented evidence—and the jury found—that her employer "had engaged in sex discrimination and unlawful retaliation . . . by [both] failing to promote her . . . and terminating her employment." 137 F.3d at 947; *see also id.* at 948–49. Because, as the Seventh Circuit there explained, "front pay . . . affords the plaintiff the same benefit . . . as the plaintiff would have received had she been reinstated," and because the salary the plaintiff would have received if reinstated to her previous position was presumably lower than it should have been as a result of the defendant's unlawful failure to promote her, front pay would not have made the plaintiff fully whole. *Id.* at 952; *see also id.* at 953 (characterizing front pay as "compensat[ing] [the plaintiff] for the immediate effects of [her] unlawful termination"). An additional award of lost future earnings, which the Seventh Circuit characterized as a recovery "for lost earning capacity," would have compensated her for being unfairly passed over for promotion. *Id.* at 952 (quoting *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992)). Consistent

reinstatement had been awarded by the court in lieu of front pay, the plaintiff "would still have been entitled to compensation for her lost future earnings").

The legal and equitable awards in this case, however, present the exact problem that *Williams* avoided: they were designed to remedy precisely the same loss. The Seventh Amendment instructs that it is the jury's decision on the front pay question that must be respected and the court's conflicting front pay award that must be set aside. Given the potential for a windfall and in light of Teutscher's affirmative election to seek front pay from the jury, the court's reinstatement award must be set aside as well.

We therefore **REVERSE** the district court's equitable awards of reinstatement and front pay.[18]

---

with the non-overlapping nature of these awards, the Seventh Circuit explicitly recognized that, "[e]ven if [the plaintiff] had been able to return to her old job, the jury could find that [she] suffered injury to her future earning capacity *even during her period of reinstatement*." *Id.* at 953 (emphasis added). Here, in contrast, the jury was instructed to include in its award all of the "damages that [Teutscher] ha[d] proven he is entitled to recover," including damages for past and future economic and non-economic injury.

[18] We address the cross-appeal by Teutscher's former counsel, William N. Woodson, III, in which RSA and Teutscher are both appellees, in a concurrently filed memorandum disposition.

M. SMITH, Circuit Judge, concurring in the judgment:

I concur in the judgment of the majority opinion. However, I disagree with the majority's Seventh Amendment analysis in Part IV of the opinion. I disagree that the district court "should have viewed itself as bound under the Seventh Amendment" because "Teutscher needed to make the same factual showing and to meet the same defenses" in order to obtain both future lost earnings and reinstatement. Maj. Op. at 21. Instead, I would hold that the district court's equitable remedy was an improper abuse of discretion, because the district court did not give reasons why additional equitable relief was appropriate after the jury had already compensated Teutscher for the monetary harm he suffered.

The district court's equitable remedy took the form of reinstatement, with front pay until reinstatement could occur. In addition, the jury awarded Teutscher a lump sum for compensatory damages that included future lost earnings. In this case, the majority's constitutional analysis is based on a conclusion that the factual underpinnings of the jury's award for future lost earnings is identical to those supporting the district court's equitable award.

I disagree that this is necessarily the case. Future lost earnings and front pay are different remedies designed to address different wrongs, and should be analyzed using a different analytical framework. As such, a plaintiff can be awarded both without offending the Constitution.

As the majority notes, the jury was only empowered to grant legal relief to Teutscher in the form of compensatory

and punitive damages on the state law claims. Maj. Op. at 13. The district court, in contrast, was only able to grant "appropriate equitable relief" on the ERISA claim. 29 U.S.C § 1132(a)(3); Maj. Op. at 13. The district court was not authorized to grant Teutscher any form of legal relief, including compensatory money damages. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *see also McLeod v. Or. Lithoprint Inc.*, 102 F.3d 376, 378 (9th Cir. 1996).

It could, however, reinstate Teutscher in his job. "Reinstatement is equitable, not compensatory relief." *McLeod,* 102 F.3d at 379. Front pay is also equitable, because it goes hand-in-hand with reinstatement and is to be used "during the period between the judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). Although front pay may look very similar to compensatory damages for future lost earnings, it is a distinct remedy. The Seventh Circuit has upheld an award of both future lost earnings and front pay, and concluded that such an award does not necessarily constitute a double recovery. *Williams v. Pharmacia*, *Inc.*, 137 F.3d 944, 953 (7th Cir. 1998). This is so because front pay is the "functional equivalent" of the equitable remedy of reinstatement. *Id.* at 952. Future lost earnings, on the other hand, are compensatory damages calibrated to actual "monetary losses after the date of judgment." *Pollard*, 532 U.S. at 852. The Supreme Court confirmed this distinction in *Pollard*, when it held that equitable front pay was separate from compensatory damages (both past and future), and was therefore not subject to the damages cap under Title VII. *Id.*

The *Williams* court also noted that a jury award for future compensatory damages was not necessarily factually inconsistent with an equitable front pay award because the awards can "compensate the plaintiff for different injuries." *Williams*, 137 F.3d at 953. Reinstatement (and front pay) puts the plaintiff back in his job, or at least pays him as if he had been reinstated. Future compensatory damages can be significantly broader than that, and encompass reputational harms, loss of experience, and other "forward-looking aspects of the injury caused by the discriminatory conduct." *Id.* Similarly, a compensatory damages award that *only* gives the plaintiff the cash value of reasonably-certain future earnings at a particular place of employment might still leave the plaintiff suffering harms that might be appropriately remedied with reinstatement, such as a restored track record and job history, which could assist the plaintiff in future employment searches.

In this way, each remedy can have some unique benefits, even though the core of the harm (a lost paycheck) can be remedied by either. In addition to this practical distinction, the Supreme Court in *Pollard* made clear that there is a technical distinction between compensatory damages for future lost earnings and equitable front pay in lieu of reinstatement. 532 U.S. at 852. For the two awards to be a violation of the Seventh Amendment, moreover, the issues underlying each must be "common to both the legal and equitable claims." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962). Again, although there is significant overlap between the compensatory and equitable inquiries, they are not identical.

The jury in this case was instructed to calculate "the present cash value of any future wages and benefits that [Teutscher] would have earned for the length of time the employment with Defendant was reasonably certain to continue," to be awarded as a lump sum. The implied factual questions to be decided by the jury were how long Teutscher was "reasonably certain" to continue his employment with RSA, and his rate of pay.

When deciding reinstatement and front pay, on the other hand, the district court must first and foremost decide whether any equitable relief is "appropriate . . . to redress" the defendant's ERISA violation. 29 U.S.C. § 1132(a)(1)(3). As the majority notes, the district court should address factors such as work-life expectancy in making this determination, which is similar to the question posed to the jury. Maj. Op. at 24–25. Moreover, it is certainly correct that the jury's monetary award is highly relevant in determining what additional equitable relief, if any, is "appropriate" in a given situation. But, in my view, the issues common to each inquiry are not precisely the same such that giving both awards would trigger a Seventh Amendment concern. The jury was asked to consider the narrow question of the cash value of the wages which Teutscher would have earned at RSA with reasonable certainty. The district court has much wider latitude when deciding whether reinstatement is "appropriate," and if so, whether it is feasible, and if not, whether to award front pay. In *Downey v. Strain*, 510 F.3d 534 (5th Cir. 2007) the Fifth Circuit noted that "front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts." *Id.* at 544 (quoting *Sellers v. Delgado Coll.*, 781 F.2d 503, 505 (5th

Cir. 1986)). The jury, which has considerably less latitude, is necessarily engaging in a narrower inquiry than the one the district court is empowered to undertake.

In sum, *Pollard* instructs us that although they may look very similar, there is a distinction between future compensatory damages and front pay that we must respect. I believe that distinction should extend into the Seventh Amendment context because it may often be perfectly reasonable for a jury to award future compensatory damages and for a district court to award reinstatement (with or without front pay) in a way that is factually consistent with the jury's verdict. This indicates that the legal and factual issues underpinning the awards are not the same. Here, the jury's verdict was general, and the district court provided very little reasoning for its equitable award. Under these circumstances, I do not think we can confidently draw the implication that the district court unconstitutionally disregarded the jury's factual findings.

I concur in the judgment, however, because I believe the district court abused its discretion in granting reinstatement in this context. As the majority observes, the jury had been asked to compensate Teutscher for the cash value of his future paychecks with RSA. The district court's analysis on reinstatement is only a paragraph, and appears to assume that additional equitable relief was "appropriate" to redress the ERISA violation over and above the jury verdict. If the district court had provided reasoning to explain why it believed reinstatement was appropriate to redress non-monetary wrongs inflicted on Teutscher, it might have articulated a basis for reinstatement that was in harmony with the damages award. On this thin record, however, it is

not apparent that is what happened. Therefore, I would reverse the equitable award as an abuse of discretion.