# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 02-4295

ROBERT MILES,

Plaintiff-Appellant,

v.

STATE OF INDIANA,

Defendant-Appellee.

————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 98 C 544—**Richard L. Young**, Judge.

————————

ARGUED SEPTEMBER 17, 2003—DECIDED OCTOBER 18, 2004

————————

Before RIPPLE, MANION and WILLIAMS, Circuit Judges.

RIPPLE, Circuit Judge. On November 3, 1998, Robert Miles filed a complaint in which he alleged racial discrimination and retaliation by his employer, the Indiana State Police, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The jury rendered a $50,000 verdict for Officer Miles on the retaliation claim. It returned a verdict for the State Police on the race discrimination claim. On March 30, 2001, Officer Miles filed a motion for equitable relief in which he sought a promotion or

front pay, an injunction prohibiting the State Police from future retaliation and an order requiring the Indiana State Police to post a non-retaliation policy. The district court denied the requested injunctive relief and, instead, required that the State Police restructure Officer Miles' current position to include supervisory responsibilities. Officer Miles now appeals the denial of his requested equitable relief. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

### 1. Officer Miles' Employment History

Robert Miles is an African American; he has been employed by the Indiana State Police since 1974. He originally served as a state trooper. In 1978, he was promoted to Sergeant and was assigned to the Operations Center. As early as 1981, Officer Miles complained about racial discrimination in the promotional decisions of the Indiana State Police. Shortly thereafter, Officer Miles filed a lawsuit that later was settled without admission of liability. In 1984, Officer Miles subsequently was promoted to First Sergeant,[1] the rank he retained at the time of this action.

After his promotion to First Sergeant, Officer Miles served as Quartermaster in the Logistics Division from 1985 until

---

[1] The structure of the Indiana State Police is a para-military ranking system where officers begin with a rank of Trooper. They can be promoted up in rank from Corporal, Sergeant, First Sergeant, Lieutenant, Captain, Major, Lieutenant Colonel, Colonel and Superintendent.

1988, and, after 1988, as the Engineering Section Commander of that division. In 1991, Officer Miles became the Acting Assistant Personnel Division Commander. In 1994, as a temporary appointment, Officer Miles was transferred to the Department of Administration to serve as the Director of Parking and Security and Chief of the Capitol Police.

### 2. Indiana State Police Promotional Process

The Indiana State Police employs a competitive selection process for promotion that includes an employee test, an application and an interview. Promotion test scores are valid for one year, and officers seeking promotion beyond that period must retake the applicable examination to establish new scores. Promotion to the highest ranks, Captain, Major, Lieutenant Colonel and Colonel, are committed to the discretion of the Superintendent.[2] In 1995, Officer Miles took the test required for promotion to the position of Lieutenant, but he did not apply for promotion. His test scores expired one year later, and he did not take a subsequent examination.

### 3. Racial Comment and Complaint

While Officer Miles was employed in the Personnel Division, he was a Section Commander, but he performed the duties of an Assistant Division Commander and served in the capacity of Division Commander in the Division Commander's absence. During one of the occasions when

---

[2] At the time of trial, the Indiana State Police employed approximately 1,300 sworn officers which was comprised of 43 First Sergeants, 36 Lieutenants, 13 Captains, 14 Majors, 3 Lieutenant Colonels, 1 Colonel and 1 Superintendent.

Officer Miles served in the capacity of Division Commander, he attended a meeting and heard a racially derogatory statement made by one Major about Major Carraway, an African-American. Officer Miles reported the statement to his direct supervisor, the Commander of the Personnel Division, who reported the statement to the Equal Employment Opportunity ("EEO") Office. No further action was taken because Major Carraway did not complain about the remark.

In December 1995, Officer Miles filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and, in February of 1996, he filed an internal EEO complaint. Both complaints alleged race discrimination. In his 1995 EEOC charge, Officer Miles alleged that his "rank and job classification have been lower than White employees with similar or less job duties and responsibilities." Pl's. Ex.8. In his February internal EEO allegation, Officer Miles offered several examples of white males who held higher ranks and had occupied the same or similar position as he had. In this subsequent complaint, Officer Miles alleged specifically that racial discrimination was the reason that he had not been promoted or that he had not received the same pay as his white colleagues. He requested a promotion and back pay. *See id.* In August 1996, Superintendent Jennings reviewed the allegations and the summary of the investigation but took no further action.

### 4. Reassignment

In September of 1996, Superintendent Jennings reassigned Officer Miles to the Records Division as a First Sergeant with no supervisory duties. His responsibilities included performing background investigations of civilian employees. In previous positions, Officer Miles had exercised supervisory responsibilities; he supervised sixty officers and sixteen civilians as Chief of the Capitol Police, and he had super-

vised twelve civilians while in the Logistics Division. Officer Miles has not been appointed to any other position since 1996.

### 5. Superintendent Carraway

In 1997, Melvin J. Carraway[3] was promoted to Superintendent of the Indiana State Police. He replaced Jennings in that position. From the time of his promotion, Carraway exercised discretionary authority over promotions to the higher ranks. Soon after Carraway's promotion to Superintendent, Officer Miles complained to him about not being promoted. Despite this complaint, Officer Miles was not promoted. Carraway testified that he did not promote Officer Miles because Officer Miles had made negative comments about him to others, *see* R.192 at 503-04, and that, when he had worked closely with Officer Miles, he had thought that Officer Miles' "performance was not too stellar." R.192 at 478. He explained that Officer Miles "did the things that were required . . . but no more than that." *Id.* He felt that Officer Miles would not be loyal to him and his administration's goals. *See id.* at 474-76, 503-04. The Superintendent further testified that he wanted a "team player" who would follow his command even if the officer disagreed. *Id.* at 501.

## B. Proceedings in the District Court

### 1. Jury Verdict and Equitable Relief

Officer Miles filed a suit against the State that alleged claims of race discrimination and retaliation; these claims

---

[3] Superintendent Carraway is the same officer who was the subject of the derogatory racial remark about which Officer Miles complained.

were tried by a jury. At the trial's conclusion, the jury was required to answer several specific questions. Specifically, the jury was asked whether Officer Miles had "proven that his complaints of discrimination were, more likely than not, a motivating factor in the decision of the defendant, State of Indiana, to transfer him to the Records Division or fail to promote him?" R.142 at 39. The jury responded affirmatively and returned a verdict for $50,000 on Officer Miles' retaliation claim.[4]

After the jury verdict in his favor on the retaliation claim, Officer Miles filed a motion requesting equitable relief for a promotion or front pay, an injunction against future retaliation, and an order requiring the State to post a non-retaliation policy. In July 2001, the court held a hearing on the issues relating to equitable relief. At this hearing, Superintendent Carraway testified that, in the past, he had promoted employees who had filed race discrimination charges but would not consider Officer Miles for a promotion because of his concerns about Officer Miles' loyalty and trustworthiness. However, Carraway determined and testified that it might be appropriate to give Officer Miles some supervisory responsibilities. Carraway testified that he had no animus or negative feeling toward Officer Miles based on his discrimination claims.

At the hearing, evidence also was presented about Standard Operating Procedure LEG-004, setting forth the State Police's Equal Employment Opportunity/Affirmative

---

[4] The jury also answered questions relating to race discrimination. They answered that Officer Miles had proven that the "State failed to promote, upgrade or appoint him," but that Officer Miles had not proven that "race discrimination was, more likely than not, a motivating factor." R.142 at 37. Accordingly, Officer Miles did not recover on his discrimination claim.

Action Policy ("EEO policy"). Superintendent Carraway testified that this policy was posted on several bulletin boards. However, Officer Miles testified that the policy was not posted on the floor on which Superintendent Carraway and he worked. The State presented evidence that indicated the Indiana State Police maintained a copy of their EEO policy on their intranet site. Carraway testified that, in addition to its EEO policy, the Indiana State Police hung EEOC posters with the pertinent discrimination information on the bulletin boards. Officer Miles testified, however, that the EEOC posters did not contain information about retaliation. As Officer Miles pointed out, and the defendants acknowledged, neither the EEOC posters nor the EEO policy specifically advised a discrimination victim of the applicable statute of limitations for filing a complaint. The State Police noted, however, that the EEO/Affirmative Action officer is responsible for advising victims of available judicial remedies and corresponding statute of limitations periods.

### 2. Decision of the District Court

The court denied equitable relief of a promotion or front pay, of an injunction prohibiting future retaliation and of an order requiring informational postings on discrimination and retaliation. However, the district court ordered the State Police to restructure Officer Miles' position so that he could exercise supervisory responsibilities similar to those that he had exercised before his reassignment to the Records Division.

The district court found that, in the past, Superintendent Carraway had promoted individuals who had filed race discrimination complaints against the State Police and that there was no evidence that he held any animus toward Officer Miles because of the discrimination or retaliation complaints. *See* R.170 at 6. The court also found that there was no ongoing evidence of race discrimination by the Indiana

State Police. However, the court found that Superintendent Carraway would not consider Officer Miles for a promotion because of his concern about Officer Miles' loyalty. The court noted that Carraway did meet with his executive staff after the jury verdict and had determined that restructuring Officer Miles' position to provide him with supervisory responsibilities would be a possible solution.

The court also found that the Indiana State Police had an EEO Policy that was set forth in a standard operating procedure. This policy was available in binders and on the State Police's intranet site. The policy describes discrimination and retaliation and directs employees who believe that they have been victims of discrimination or retaliation to call or write the EEO office directly. The EEO officer is required to advise persons with potential complaints of the remedies available to them and of the applicable statutes of limitations. The EEO office also has a procedure for investigating complaints. The district court further found that the Indiana State Police had posted the EEOC materials, including contact information, on at least four bulletin boards in the headquarters where Officer Miles was stationed. Finally, the court noted that neither the EEO policy available in the binders or on the intranet nor the EEOC posters advise a victim of the statute of limitations for filing a complaint. However, the EEO officer must advise the individuals of the limitations period to file a claim once he or she is contacted.

In determining the appropriateness of the relief sought, the district court started from the position that a prevailing plaintiff is entitled to relief that will make him whole. *See* R.170 at 8. The district court then turned to the requested promotion. The court noted that the jury had found that the State Police unlawfully had retaliated but that the jury's verdict had not indicated whether this finding was based on the failure to promote Officer Miles or on the decision by

Jennings, the former Superintendent, to reassign Miles to the Records Division without any supervisory responsibilities. The court also found that the current Superintendent believed, though not based on racial animus, that Officer Miles could not be loyal. In the court's view, Superintendent Carraway was entitled to promote those whom he considered loyal. The court found that requiring a promotion might be against the best interest of the State Police or might cause unwarranted friction. The court also noted that, in any event, the next logical promotion would be to Lieutenant rather than Captain, but that Officer Miles had failed to take the necessary tests for promotion to Lieutenant.

The court next considered whether to award front pay because a promotion was not warranted. The court started from the position that "[t]he purpose of front pay is to put the plaintiff in the same position that he would have been had he been reinstated." R.170 at 10 ¶ 14 (citing *McNeil v. Econ. Lab., Inc.*, 800 F.2d 111, 118 (7th Cir. 1986)). The court calculated the difference in compensation between Officer Miles' present pay grade and the compensation he would have earned if he had been promoted. It then multiplied that difference by the number of years Officer Miles expected to remain in active service. The court's determination of front pay, in addition to the back pay request, totaled $42,120, which was less than the $50,000 jury verdict. Accordingly, the district court held that Officer Miles had been made whole by the jury verdict. The only equitable relief the court deemed appropriate was reassignment to a supervisory position similar to what Officer Miles had held before former Superintendent Jennings reassigned Officer Miles.

Moreover, the district court decided that an injunction against future retaliation was not warranted. Relying on our decision in *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 864 (7th Cir. 2001), the court held that the relevant inquiry was

whether the discriminatory conduct may persist in the future. The court found that the State Police had a new administration headed by Superintendent Carraway and that there was no evidence of future retaliation.

Finally, the court denied the request for an injunction mandating the State Police to post non-retaliation policies. The court found the policies were available in both hard copy and on the intranet. Further, there were EEOC posters with contact information about persons who could instruct a victim on the limitations period. The fact that Officer Miles and other employees had filed EEOC charges indicated to the district court that the policies in place were adequate to inform employees of their rights.

# II

## DISCUSSION

On appeal, Officer Miles contends that the district court erred in denying his requests for equitable relief of a promotion or front pay, of injunctive relief against future retaliation, and of relief requiring the State Police to post notices that state the time limits for filing a complaint. We review the district court's denial of equitable relief for an abuse of discretion. *See Bruso*, 239 F.3d at 861. Although we review the decision denying equitable relief for abuse of discretion, not all aspects of the decision merit the same deference. We utilize the abuse of discretion standard to evaluate the district court's "application of the facts to the appropriate legal standard, and the factual findings and legal conclusions underlying such decisions are evaluated under the clearly erroneous and the *de novo* standards, respectively." *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 974 F.2d 775, 780 (7th Cir. 1992).

### A. Promotion or Front Pay

"A Title VII victim is presumptively entitled to full relief." *Hutchison v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). The award of either promotion or front pay are equitable remedies left to the district court's discretion, but such discretion must be guided by legal principles. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975). The district court must exercise its equitable power in a manner consistent with the objectives of Title VII, *see id.* at 416, and a major "purpose of Title VII [is] to make persons whole for injuries suffered on account of unlawful employment discrimination," *id.* at 418. The district court's discretion is bound by the dictates of Title VII, and, accordingly, we shall approve the denial of equitable relief only if that denial does not frustrate Title VII's objective of making the plaintiff whole. *See Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1123 (3d Cir. 1988).

To make the plaintiff whole, promotion to the position the plaintiff would have held absent the discrimination is often the preferred remedy, and courts should award a promotion when doing so is feasible. *See Bruso*, 239 F.3d at 861; *see also Richerson v. Jones*, 551 F.2d 918, 923 (3d Cir. 1977) (holding that the district court could have awarded a retroactive promotion if it had found that the plaintiff would have been promoted but for the unlawful discrimination). However, awarding a promotion may create hostility or friction in the work environment. *See Bruso*, 239 F.3d at 861. In these situations, courts are not required to grant such relief; indeed, under certain conditions, such an award is an inappropriate remedy. *See id.*; *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994). As an alternative, the district court has discretion to award front pay in order to make the plaintiff whole. *See Bruso*, 239 F.3d at 862.

An award of front pay seeks to place the plaintiff in the same position he would have occupied had he actually been promoted. *Id.*

The district court ordered neither a promotion nor front pay for Officer Miles. We must determine whether the district court abused its discretion in denying both equitable remedies after a jury had found in favor of Officer Miles on his retaliation claim.

### 1. The Jury Verdict

We must ascertain the scope, and corresponding restrictive impact, of the jury verdict on the district court's factual findings. It is settled practice that "[w]here both legal and equitable relief are sought by a plaintiff, the Seventh Amendment right to a jury trial requires that the legal claims be tried first, to a jury." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978) (citing *Beacon Theaters v. Westover*, 359 U.S. 500 (1959)). After a trial on the legal issues, any issues

> necessarily and actually decided by the jury are foreclosed under settled principles of collateral estoppel from subsequent reconsideration by the district court. The court may not make findings "contrary to or inconsistent with the jury's resolution . . . of that same issue as implicitly reflected in its general verdict . . . on the damages claim."

*Id.* (quoting *Florists' Nationwide Tel. Delivery Network v. Florists' Tel. Delivery Ass'n*, 371 F.2d 263, 271 (7th Cir. 1967)). The judge is bound by the issues necessarily decided by the jury, and, therefore, the jury's determination often affects the judge's disposition of the accompanying equitable claim. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499

(7th Cir. 2000); *Lincoln v. Bd. of Regents of the Univ. Sys. of Georgia*, 697 F.2d 928, 934 (11th Cir. 1983). However, when the basis of the jury's verdict is unclear, each of the potential theories supporting the verdict is open to contention "unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined." *Russell v. Place*, 94 U.S. 606, 609 (1876). Therefore, when several issues have been litigated, and the jury may have supported its verdict by finding in the plaintiff's favor on any one of the issues but which one is not clear, the court is free to determine the basis of the jury's verdict unless extrinsic evidence clearly resolves the issue. *See id.*[5]

In finding for Officer Miles on the retaliation claim, the jury answered in the affirmative a verdict form that asked whether Officer Miles had "proven that his complaints of discrimination were, more likely than not, a motivating factor in the decision of the defendant, State of Indiana, to transfer him to the Records Division or fail to promote him?" R.142 at 39. Because of the phrasing of the special verdict inquiry, the jury verdict can be read in three possible ways. The jury could have found retaliation in the transfer of Officer Miles to the Records Division, retaliation in failing to promote Miles, or retaliation in both the reassignment and failure to promote.[6] If the jury only found retaliation in

---

[5] *See also Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978) (noting that the complexity of issues before the jury could not be said necessarily to foreclose any issue, but holding that reading the evidence and the jury instructions together, the verdict had to include a finding on market allocation).

[6] Reviewing the evidence in light of the jury instructions does not foreclose any of the three possibilities. Officer Miles complained of race discrimination in 1995, before he was reassigned to the

(continued...)

the reassignment to a position that lacked any supervisory responsibility then providing equitable relief of supervisory responsibility would make Officer Miles whole without the need for either a promotion or front pay. By contrast, if the jury had found retaliation in failing to promote, Officer Miles, then the provision of supervisory duties alone would not make Officer Miles whole. The jury found retaliation, but did not reveal the basis for that finding.

## 2. The District Court's Decision on Promotion

Acknowledging the ambiguity in the jury's verdict,[7] the district court proceeded to determine that Superintendent Carraway, the current Superintendent, had not acted out of racial animus or retaliatory motive when he had not promoted Officer Miles from the rank of First Sergeant to Captain.[8] Fairly read, the district court's order noted that the

---

[6] (...continued)
Records Division and during a time when he was not promoted. Both employment actions occurred after Officer Miles' complaints, therefore, leaving open the possibility that the jury's finding of retaliation was based on either premise or both.

[7] The district court noted that, "although, the jury found Defendant liable on Plaintiff's claim for retaliation, it is not clear from the jury verdict whether the jury's finding of retaliation was based upon Defendant's failure to promote Plaintiff or the fact that Jennings, the Defendant's former Superintendent, reassigned him to the Records division." R.170 at 9.

[8] Officer Miles emphasizes a connection between Carraway's claim that Miles lacked loyalty and the derogatory racial statements made to Carraway that Miles complained about. He summarizes testimony from Superintendent Carraway that, he asserts, indicates that the racial comment played a role in his relationship with

(continued...)

Superintendent had the authority, as a matter of discretion, to make promotions to the rank of Captain and above and that the Superintendent therefore was permitted to use his estimation of an officer's loyalty to him in making such promotions. The court supported its conclusion by noting that Superintendent Carraway had testified that he did not believe Officer Miles would be loyal to him or his administration. The court's findings establish that the retaliation suffered by Officer Miles was with respect to his assignment to the Records Division without any supervisory responsibility.[9]

Because the district court determined that the retaliation suffered by Officer Miles was traceable to his assignment to the Records Division, and not to his allegation of discrimination with respect to promotion, the matter of front pay was not really at issue. As we have noted earlier, front pay

---

[8] (...continued)
Carraway. The testimony cited does not support this contention or require us to find that the district court's factual conclusion was clearly erroneous.

On direct examination, Carraway was asked whether the "comment played any role . . . in the relationship between the two of you?" He answered: "Probably from his [Officer Miles'] perspective, and I don't have any facts to think that he's carried that around with him, but it has not stayed with me, but I do recall the incident. I know he took offense to it. . . . And I think he's sort of carried that on for a number of years." R.192 at 475.

[9] Our conclusion is supported by the district court's decision refusing to enjoin future retaliation. *See infra* Part II.B. The district court found that the State Police had a "new administration" from the one that had retaliated against Officer Miles in the past. R.170 at 12 ¶ 27. The current superintendent did not have improper motives, and therefore there was no concrete danger of future retaliation.

is an equitable remedy that is awarded in lieu of promotion when promotion is inappropriate or unavailable. *See Pals*, 220 F.3d at 499. "[F]ront pay is the functional equivalent of [promotion] because it is a substitute remedy that affords the plaintiff the same benefit (or as close an approximation as possible) as the plaintiff would have received had she been [promoted]." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998). When the district court concluded that promotion was not appropriate because the jury verdict of retaliation properly was interpreted as based on the reassignment rather than on the failure to promote, the court had no need to consider front pay as an alternate to promotion.

## B. Additional Relief

In determining whether to grant injunctive relief prohibiting further retaliation for a successful discrimination plaintiff, the proper inquiry is whether the defendant's "discriminatory conduct could possibly persist in the future." *Bruso*, 239 F.3d at 864. After noting the appropiate standard, the district court concluded that, because the State Police "now has a new administration," there was no reason to believe that there was a danger of future retaliation. R.170 at 12 ¶ 27. The district court found that Superintendent Carraway held no racial animus or retaliatory motive, and our review of the evidence gives us no reason to conclude that the court's determination was clearly erroneous.

Officer Miles further contends that the posters issued by the EEOC do not mention specifically retaliation and also fail to alert potential victims that the EEOC has different filing deadlines than the State Police's EEO office. The State Police's EEO policy states that a complaint must be filed within one year, but Officer Miles points out that this longer internal filing deadline may operate to divert complaints

until the 300-day EEOC deadline already has passed. Officer Miles contends that the lack of information currently posted in his place of employment, coupled with the longer internal review process, misleads employees. The district court denied the request, noting that the Indiana State Police had a "non-retaliation policy which is widely available in both hard copy and on the intranet," R.170 at 12 ¶ 29, and the EEOC posters were displayed and gave contact information about pursuing a claim against the State, *see id.* at ¶ 30.

The district court has broad discretion to tailor equitable remedies to provide full relief. *See Bruso*, 239 F.3d at 863. The trial court noted that Officer Miles "and other employees have filed EEOC charges against the Defendant." R.170 at 12. From this fact, it concluded that the experience of others indicated that the policies and procedures in place "adequately inform the Defendant's employees of their rights pursuant to Title VII of the Civil Rights Act." *Id.*

Further, although the EEOC poster does not inform a victim of the precise statute of limitations, it does provide a contact address and toll-free phone number. The posters also advise any person who believes he has been a victim of discrimination to contact the EEOC *immediately. See* Pl's. Ex.30. The State Police's internal EEO policy did provide information on discrimination and retaliation in addition to providing contact information and a final time to file an internal complaint. In addition, the EEO Officer was charged with the obligation to advise the victim of the relevant statute of limitations period for filing suit. The State did not attempt to deceive Officer Miles of the time to file a complaint by merely allowing a longer period to file a request for internal review. We cannot conclude that the posters are inadequate when viewed as one tool among others in the State Police's attempt to fulfill its responsibilities to comply with the anti-discrimination laws.

### Conclusion

For the foregoing reasons, we affirm the holding of the district court.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*