*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-166

NORMAN M. GLASGOW, JR., ET AL., APPELLANTS,

V.

CAMANNE MANAGEMENT INC., ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-2880-14)

(Hon. Jennifer A. Di Toro, Trial Judge)

(Argued June 11, 2020                    Decided October 14, 2021)

*Paul J. Kiernan*, with whom *Ross A. Nabatoff* and *Stephen J. O'Connor* were on the brief, for appellants.

*Daniel S. Crowley*, with whom *J. Michael Hannon* was on the brief, for appellees.

Before GLICKMAN and DEAHL, *Associate Judges*, and RUIZ, *Senior Judge*.

DEAHL, *Associate Judge*:  Norman Glasgow, Jr., and brothers F. Davis and Charles Camalier pocketed more than $5 million—split evenly among them—in proceeds from a property sale. Those proceeds rightly belonged to their lender, which successfully sued them for the money's return, plus punitive damages and

attorney's fees.  The Camalier brothers settled the matter, post-trial, for $8.5 million. Glasgow would not contribute toward that settlement or return his share of the ill-gotten funds, and the Camaliers sued him.  Their lead claim was for breach of contract, alleging the trio had an oral agreement to share equally in the profits and losses of their joint ventures, so that Glasgow owed them one third of the $8.5 million settlement (about $2.8 million).  A jury rejected that claim, apparently finding there was no enforceable oral agreement.  The Camaliers also pressed an unjust enrichment claim, seeking to have Glasgow repay the $1.7 million he had pocketed but the Camaliers ultimately repaid.  The trial court found in favor of the Camaliers on that claim and ordered Glasgow to repay that $1.7 million, plus interest and some attorney's fees.

Glasgow now appeals, arguing (among other things): (1) that the jury's verdict in his favor on the contract claim foreclosed the trial court's ruling in the Camaliers' favor on the unjust enrichment claim, (2) that the Camaliers cannot recoup the $1.7 million because they are not the correct party to seek restitution of that amount, and (3) that the trial court erred in calculating the amount of costs and attorney's fees. We disagree with the first two arguments but agree with the third.  We affirm the trial court's judgment save for its award of fees and costs, which we vacate and remand for recalculation.

**I.**

In 1989, Glasgow and the Camalier brothers bought the ground lease for property located at 1331 L Street, N.W. The trio made the purchase through an entity they created for that purpose called Square 247 Associates Limited Partnership, with each partner holding an equal one-third share of the partnership. The Camaliers were direct partners, but Glasgow—a real-estate attorney who wanted to invest without revealing his identity—joined via a trust called IRT. IRT is Glasgow's alter-ego and his co-appellant in this appeal. Charles Camalier controls Camanne Management, a co-appellee in this appeal. We often refer to the co-appellees collectively as the Camaliers.

The Square 247 Partnership Agreement stated that all proceeds from the property would be shared among the partners pro rata according to their partnership interest. The trio sought financing to maintain the property until they sold it. They secured a $4.5 million loan from HCP Life Science Assets and, in return, granted HCP a 50% interest in the partnership plus the right to recoup its loan balance out of any partnership profits before other partners collected their shares.

Glasgow and the Camalier brothers each received a third of the loan, $1.5 million. As of 2000, the property still had not sold and HCP forgave the accrued

interest, which by then exceeded the principal, and re-issued the original promissory note as three separate notes to each of the original partners. A tax adviser told the men that retaining the notes with this forgiven interest would create tax liability, so Glasgow (through IRT) and Charles Camalier assigned their notes to Camanne, which took their Square 247 partnership interests as consideration. Charles Camalier signed the paperwork as IRT's trustee and would go on to sign as IRT's trustee on all Square 247 transactions until 2014. F. Davis Camalier chose not to transfer his note or partnership interest. After all was said and done, HCP owned 50% of the limited partnership shares and the Camaliers owned 50%—either directly or through Camanne.

Between 2000 and 2005, even though IRT had technically sold its partnership interest to the Camaliers, Glasgow continued to pay a third of the property's maintenance costs. The Camaliers eventually secured a buyer in 2005. After the buyer deposited more than $5 million in proceeds in the Square 247 partnership's bank account, Charles Camalier instructed the bank to distribute the funds in thirds: about $1.7 million each to himself, his brother, and Glasgow. Glasgow's funds went directly into his personal bank account. HCP was left in the dark and received nothing.

When HCP learned what had happened years later, it sued Square 247 and the original partners for failing to distribute the proceeds to HCP under their agreement, for breach of fiduciary duty, and for failing to repay the promissory notes. After a trial, the jury awarded HCP more than $8 million in damages and nearly $1 million in attorney's fees. The verdict assigned about $1.77 million of joint and several liability for the breach of partnership agreement claim to all of the original partners, including Glasgow's alter ego, IRT. The remaining liability was assigned to the Camaliers or entities they controlled: $1.77 million for breach of fiduciary duty, $1.77 million for breach of promissory note, and $2.75 million in punitive damages. The court separately imposed a constructive trust of about $3.5 million "on the benefits, properties and compensation of judgments received in connection with the sale of the" property.

While that case was on appeal, the Camaliers negotiated a global settlement. Glasgow offered to pay $500,000, but only if the Camaliers released him from any claims they might have against him. The Camaliers rejected Glasgow's offer and finalized an $8.5 million settlement discharging all claims in the case, including those against Glasgow's alter-ego, IRT. Charles Camalier signed the settlement on behalf of IRT. The Camaliers deposited $8.5 million into Square 247, enabling it to pay the HCP settlement. Glasgow contributed nothing.

The Camaliers sued Glasgow. Their lead claim was that Glasgow breached a longstanding oral agreement among the trio—the "Three Musketeers" Agreement—in which the three partners agreed to share equally in the liabilities and profits from their joint real estate ventures like Square 247. They sought a third of the HCP settlement payment from Glasgow, about $2.8 million, under that claim. According to the Camaliers, the reason they distributed one-third of the Square 247 property-sale proceeds to Glasgow in 2005, despite IRT having left the partnership in 2000, was their belief that they were bound by the Three Musketeers Agreement. Glasgow disputed the Three Musketeers Agreement's existence, claiming it was a fabrication. He also argued that the terms of any such agreement were too indefinite to be enforceable. The jury ruled in Glasgow's favor on the breach of contract claim. Specifically, the verdict form asked whether they found Glasgow "liable for breach of the so-called Three Musketeers Agreement" and the jury marked "No." The court later interpreted the verdict as a finding that "no Agreement existed."

The Camaliers also brought an unjust enrichment claim. They argued Glasgow benefitted when he received $1.7 million from the 2005 sale and was unjustly enriched by virtue of his failure to return that money after the settlement with HCP. The trial court had initially dismissed the unjust enrichment claim as a matter of law because Glasgow received those proceeds from Square 247, rather

than the Camaliers themselves. It reasoned that there can be no unjust enrichment where the claimant has conferred no *direct* benefit. But the court later reversed course after the Camaliers sought reconsideration, concluding that a direct payment is not a necessary component of an unjust enrichment claim. The court endorsed the Restatement's view that "[i]f a third person makes a payment to the defendant in respect of an asset belonging to the claimant, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 47 (Am. Law. Inst. 2011). The court concluded that the Camaliers "conferred a benefit of one-third share of profits to Mr. Glasgow" and his retention of the money "became unjust when Mr. Glasgow refused to contribute to the settlement." "[B]ecause the Camaliers repaid the proceeds, . . . including the portion retained by Mr. Glasgow," the court reasoned that "it would be a manifest injustice to permit Mr. Glasgow to retain . . . the money he received." It thus entered judgment against Glasgow on the unjust enrichment count and ordered him to repay the $1.7 million he received, with interest, to the Camaliers.

The court rejected Glasgow's argument that the money he received after the property sale was IRT's partnership share and rightly retained by him. The factual premise of that argument was mistaken, as the court concluded that "IRT was not a partner when the ground lease was sold" because by "that time, IRT had transferred

its interest to Camanne, which was owned by the Camaliers." It reasoned that Glasgow's claims that IRT had re-acquired its original partnership interest prior to that sale were at odds with the evidence, particularly the lack of any record showing such a transfer or consideration for it. Because "IRT was not a partner when the ground lease was sold," the court concluded the $1.7 million in proceeds Glasgow received were not "for IRT's [non-existent] partnership share." Instead, the record supported the Camaliers' claim that they made the $1.7 million payment based solely on a mistaken belief that they owed it to Glasgow under an (ultimately non-existent or unenforceable) oral agreement.

The court then considered Glasgow's counterclaims, which alleged that Charles Camalier breached his fiduciary duties as trustee of IRT in various ways. Two of Glasgow's various theories are relevant to this appeal: First, he argued that Camalier breached his fiduciary duties to IRT when he negotiated the HCP settlement without negotiating a release for IRT or Glasgow from unjust enrichment claims that Camalier intended to bring in this subsequent suit. Second, he alleged that Camalier breached his fiduciary duties per se by suing IRT while also serving as its trustee. The court rejected both arguments. As to the first, it reasoned that Camalier "testified without contradiction that he consulted with Mr. Glasgow on every decision related to the litigation and settlement" and there was no evidence

that Camalier knew or should have known that Glasgow would ultimately give him grounds to sue IRT for unjust enrichment. As to the second, no legal authority supported Glasgow's proposition that a trustee violates his fiduciary duty by suing his trust. The court therefore dismissed the counterclaims. In a subsequent order, the court awarded the Camaliers one-third of their attorney's fees and costs related to this litigation, doing so under contractual provisions between the parties providing for certain fee shifting, as discussed further below.

Glasgow now brings this appeal.

## II.

On appeal, Glasgow argues the trial court erred in finding for the Camaliers on their unjust enrichment claim because it was foreclosed by the jury's verdict in his favor on the contract claim. He also maintains that he was contractually entitled to receive the $1.7 million in proceeds under the Square 247 Partnership Agreement, a contractual right which extinguishes any equitable claim the Camaliers might otherwise have for that same money. We address those arguments in turn, and find neither persuasive.

## A.

Glasgow argues that the jury's verdict in his favor on the contract claim precluded the court from ruling for the Camaliers on their unjust enrichment claim. This argument takes two forms: First, he argues that because the jury might have concluded the Three Musketeers Agreement existed and that he simply did not breach it, the Camaliers' only remedy to recoup that money was their ultimately unsuccessful breach of contract claim. Second, he argues that the unjust enrichment claim was simply the contract claim in disguise, so the trial court's award was inconsistent with the jury's verdict.

Unjust enrichment occurs "when a person retains a benefit (usually money) which in justice and equity belongs to another." *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (quoting *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005)). An unjust enrichment claim is generally barred where a contract controls the respective rights of the parties. *Falconi-Sachs*, 142 A.3d at 556 ("Unjust enrichment claims typically lie in the absence of a contractual arrangement."). It is well-established that courts "will not displace the terms of [a] contract and impose some other duties not chosen by the parties." *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996). Indeed, the unjust enrichment doctrine derives from the principle that equity compels a remedy only where no remedy at law exists. *See 4934, Inc. v. District of Columbia Dep't of*

*Emp. Servs.*, 605 A.2d 50, 55 (D.C. 1992); *Terrace v. Thompson*, 263 U.S. 197, 214 (1923) ("[A] suit in equity does not lie where there is a plain adequate and complete remedy at law."). That principle is of no help to Glasgow, however, because it is apparent from the jury's verdict that the jury found just as Glasgow had argued: there was no enforceable Three Musketeers Agreement.

Glasgow counters that so long as the jury *might* have concluded that the Three Musketeers Agreement existed, we are compelled under the Seventh Amendment to reverse the trial court's holding that it did not exist.[1] We disagree. First, as a factual matter, that the agreement might have existed runs contrary to his counsel's insistence at trial that it did not and could not exist. Glasgow's counsel called the agreement "pure unadulterated fiction" and argued that, even had there been such an agreement, it was too indefinite to enforce. Counsel concluded by asking the jury to "return a verdict of no liability on whether there was an oral agreement," thus equating the question of the contract's existence with whether he was liable for breaching it. Glasgow did not advance any theory before the jury that an oral

---

[1] Glasgow also argues that under Super. Ct. Civ. R. 49(b)(2) the trial court was required but failed to enter judgment based on the jury's verdict. This is the same argument in different packaging. Whether the trial court in fact ultimately entered "an appropriate judgment on the verdict," as Rule 49(b)(2) requires, depends upon whether Glasgow is right that the trial court's unjust enrichment ruling contravened the jury's verdict. It did not.

contract existed but that he did not breach it, nor does he now articulate any version of facts upon which a jury might have reasonably reached that conclusion. He argues merely that the jury's underlying basis for its verdict is "unknown" because the jury was not asked to make a separate factual finding.

Contrary to this argument's premise, the trial court is not obliged to steer clear of any theoretically possible conflict with the jury's verdict, no matter how far-fetched. Under the Seventh Amendment, it is enough that the court adopted a reasonable interpretation of the verdict, supported by the evidence. *See Teutscher v. Woodson*, 835 F.3d 936, 952 (9th Cir. 2016) (holding that where "the basis for the jury's verdict is open to multiple interpretations," a trial court acting in equity may "reach any interpretation that is supported by the evidence"); *Miles v. Indiana*, 387 F.3d 591, 600 (7th Cir. 2004) (holding that where the jury may have found in favor of a party for any of several reasons, "the court is free to determine the basis of the jury's verdict unless extrinsic evidence clearly resolves the issue"); *Williams v. First Gov't Mortg. & Invs. Corp.*, 225 F.3d 738, 748 (D.C. Cir. 2000) (jury's verdict has "no binding effect on the district court's subsequent factfinding" where "nobody can say what the jury found the facts to be" in light of verdict's generality); *Burton v. Armontrout*, 975 F.2d 543, 545 (8th Cir. 1992) (where a verdict is ambiguous about the jury's underlying factual findings, a court acting in equity may make its own

factual findings). The court did that here when interpreting the jury's verdict to mean there was no enforceable Three Musketeers Agreement.

Glasgow tries to distinguish some of these cases without addressing their underlying logic. For example, he argues that *Miles* does not give a judge the authority to "arrive at a liability finding different from what the jury concluded." True enough. A judge is no doubt "bound by the issues necessarily decided by the jury," *Miles*, 387 F.3d at 599, but judge and jury are not at odds when the judge's liability finding on a separate equitable claim is consistent with a reasonable interpretation of the jury's verdict. If this jury concluded that no contract existed, the general verdict form required it to answer "No" on liability, just as it did. Neither party disputes that the court's interpretation of the verdict is supported by the evidence. The court was not only free to interpret the verdict as it did, but it was likely bound to do so, given the lack of any reasonable alternative. Glasgow is thus incorrect to maintain that an unjust enrichment claim was inconsistent with the jury's verdict; it was harmonious with it.[2]

---

[2] Glasgow argues that our decision in *Falconi-Sachs,* 142 A.3d at 556, permits a trial court to entertain unjust enrichment only where it first finds an alleged contract invalid or unenforceable. That point is of no help to Glasgow, as even on its own terms a non-existent contract is neither valid nor enforceable.

The second variation of Glasgow's argument is that the Camaliers' unjust enrichment claim was "identical" to their contract claim. That is wrong too. The bottom-line of those claims exposes the infirmity in Glasgow's argument: the contract claim sought a $2.8 million contribution toward the $8.5 million settlement, on the theory that Glasgow was contractually obliged to pitch in his one-third share. By contrast, the theory of unjust enrichment the trial court ultimately credited was limited to disgorgement of the $1.7 million in ill-gotten proceeds that the Camaliers funneled to Glasgow under a misapprehension that they were contractually bound to do so. Nothing precludes a plaintiff from pleading an unjust enrichment claim as an alternative to a breach of contract claim even when seeking the same amount,[3] but the different remedies here illustrate the distinct theories.

**B.**

---

[3] The Camaliers did seek $2.8 million as part of their unjust enrichment claim, but that was on a theory—not credited by the trial court—that the settlement agreement itself unjustly conferred $2.8 million on Glasgow. The trial court instead credited the Camaliers' theory that the $1.7 million in proceeds to Glasgow was the relevant unjust enrichment, and that is plainly not duplicative of the contract claim seeking the greater amount.

Glasgow argues that IRT was a Square 247 partner at the time the ground lease was sold. If true, the argument goes, the Square 247 Partnership Agreement controls claims between the parties so that no unjust enrichment claim could survive. This argument attacks the trial court's factual determination that "IRT was not a partner when the ground lease was sold," and we review such factual findings for clear error.[4] *Cahn v. Antioch Univ.*, 482 A.2d 120, 128 (D.C. 1984) ("[A] trial court's findings of fact will not be disturbed unless they are clearly erroneous."); *Spargnapani v. Wright*, 110 A.2d 82, 85 (D.C. 1954) (to find clear error we must review the evidence and be left with a "definite and firm conviction" that a mistake was made). We discern no such error.

Glasgow highlights tax documents and testimony from the partnership's outside tax accountant, Paul Wilner, suggesting IRT was a Square 247 partner at the time of the property sale. For 2004 and 2005, Wilner prepared "Schedule K-1" tax return documents for each of the partners. A checkbox on the IRT K-1 tax forms for

---

[4] Glasgow points out that the trial court stated that the "2004 and 2005 tax returns for S247 confirm that IRT was a limited partner in S247 during those years." But it later clarified that statement, in denying Glasgow's order for relief from judgment, as merely finding that the tax returns indicated (albeit falsely) that IRT was a limited partner during those years. It then stated its unequivocal finding that "the evidence established that IRT was not a partner when the ground lease was sold."

those two years indicates that IRT was a "Limited partner or other LLC member," and the 2005 K-1 form shows a cash disbursement to IRT for the sale proceeds. Wilner testified that he prepared the documents based on information from either a Square 247 accountant or Charles Camalier himself. Wilner also gave his interpretation of what the K-1 forms meant:

> You can see, if we go back to the 2004 tax return, the owner, Camanne Management, transfers its ownership back that it purchased in 1999, back to Chris Camalier and [Norman] Glasgow, . . . So at the end of '04 Chris Camalier and [Norman] Glasgow were now owners again because they had purchased their interest from Camanne Management. As owners in 2004, when we come to 2005 and there's a sale of the property, as owners they participated in that cash.

The Camaliers counter, as they did below, that Glasgow never "executed any document conveying Camanne's interest back" to him, but that instead Charles Camalier "told Wilner that Glasgow was back in the deal and that [Wilner] should prepare the tax returns accordingly." Charles Camalier testified that being "back in the deal" meant merely that the Camaliers would honor a three-way sharing agreement consistent with their dealings in numerous property transactions where Glasgow had no actual legal interest. When it came to Square 247, he stated: "[W]e honored our agreement that he was to be treated equally with us, and even though

neither he nor I were partners in the deal at that point in time, we treated the three of us equally, and he got his one-third share."

The trial court had every reason to credit that explanation and no record evidence clearly undermines it. Wilner did not support his supposition that Glasgow re-acquired his ownership interest and re-assumed his original promissory notes with any documentation other than the single checkbox on the K-1 forms he prepared. Nor are there any documents in the record showing the partnership interest being transferred back to IRT or showing IRT reassuming a promissory obligation. By contrast, prior interest transfers and assumptions of promissory notes are supported by documents in the record. Without direct documentary evidence of the partnership interest being transferred back to Glasgow—or evidence of any consideration for such a transfer—we lack a firm conviction that the trial court was wrong to conclude that IRT was not a partner at the time of sale. It is clear that the trio had informal investment dealings over the years, and even here Glasgow contributed to the Square 247 property expenses for several years when he was indisputably not a partner.

Finally, Glasgow pivots to an argument that the Camaliers admitted IRT was a Square 247 partner at the time of sale during the HCP litigation, and that "preclude[s] the argument that IRT was not a partner" at the time of sale. Assuming

the premise is true, the conclusion does not follow. Glasgow seems to be arguing that the Camaliers are collaterally or judicially estopped from taking a different factual stance in this litigation, but he ignores the critical fact that the Camaliers and IRT were not adverse in the HCP litigation; they were co-defendants, jointly represented by the same law firm. No statement by that defense group could now be binding by one against another under the collateral estoppel doctrine, which generally precludes relitigating issues that have been resolved in prior disputes *between* parties. *See Smith v. Jenkins*, 562 A.2d 610, 617 (D.C. 1989) ("[I]ssue preclusion operates to bar relitigation of identical issues actually decided between the parties or their privies."); *Johnson v. District of Columbia*, 853 A.2d 207, 211 (D.C. 2004) (the "issue cannot again be litigated between the same parties") (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).

There is also no unfairness to Glasgow that would warrant judicially estopping the Camaliers from arguing in this litigation that IRT was not a partner in Square 247 at the time of the sale. *See Atkins v. 4940 Wisconsin, LLC*, 93 A.3d 1286, 1289-90 (D.C. 2014) ("Judicial estoppel is an equitable doctrine invoked at a court's discretion," generally requiring one party to show the other has "derive[d] an unfair advantage . . . if not estopped" from altering its prior position) (internal quotation marks omitted). If anything, Glasgow was advantaged by the HCP defense group's

seemingly false position that IRT was a member of Square 247 at the time of the property sale. That kept Glasgow from being held personally liable in that litigation—in restitution and punitive damages—for directly pocketing the $1.7 million. We reject Glasgow's attempt to turn the defense group's decision to shield him from personal liability in the HCP litigation as a sword against the Camaliers.

## III.

Glasgow next argues that, assuming unjust enrichment was an available remedy despite the jury's verdict, the trial court made "numerous errors of law" in ruling for the Camaliers on their unjust enrichment claim. He raises a host of arguments that can be grouped into two categories: (1) the trial court endorsed a theory of unjust enrichment that has no basis in the law, and (2) the Camaliers are not the right parties to bring this unjust enrichment claim. Taking those arguments in turn, we again find neither persuasive.

## A.

We begin with Glasgow's sweeping legal claim that the trial court's "legal analysis was wrong." Underneath that broad umbrella he launches two discrete attacks: (1) he argues that this is in fact an improperly pled claim for indemnification

or contribution to the settlement, and (2) he insists that his liability should at most be about $400,000 (a one-fifth share of the breach of contract claim that the HCP jury found IRT liable for).

The elements of an unjust enrichment claim are that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Comms., Inc. v. Thompson*, 878 A.2d 1218, 1222 (D.C. 2005). The trial court reasoned that the Camaliers directed $1.7 million in proceeds to Glasgow based on their belief that he was owed that amount under the Three Musketeers Agreement. They were mistaken in that belief—there was no such agreement, as the jury's verdict established—but contrary to Glasgow's arguments, unjust enrichment claims extend to "[p]ayments resulting from a misunderstanding of the extent or the existence of a valid contractual obligation." Restatement (Third) of Restitution and Unjust Enrichment § 6 cmt. *b*. While there are some exceptions to that rule, Glasgow does not suggest any of them apply here.

This is not a claim for indemnification, contribution, or some one-fifth share of the HCP jury verdict; those are strawmen Glasgow props up to tear down. It is instead a claim to recoup the $1.7 million conferred upon Glasgow based on the

Camaliers' admittedly mistaken belief that the trio had a contract to share in the liabilities of their ventures.[5] The settlement agreement with HCP is relevant to that analysis in at least one respect: had Glasgow contributed a one-third share of the settlement, there would be no injustice vis à vis the Camaliers in him retaining the $1.7 million in proceeds, as the trial court said when it noted that Glasgow's "retention of the [$1.7 million] became unjust when [he] refused to contribute to the settlement." In other words, Glasgow might have conformed his behavior to the Camaliers' mistaken belief that they had a binding contract, but when he did not— despite having benefited from their mistake—his retention of the $1.7 million was unjust.[6]

---

[5] While the jury's verdict established that there was no enforceable Three Musketeers Agreement, *supra* Part II.A, there is plenty of evidence to support the conclusion that the Camaliers incorrectly believed that there was one. For instance, the very fact that the Camaliers paid Glasgow a third of the 2005 proceeds despite having no contractual obligation to do so suggests they believed, albeit incorrectly, that they were contractually bound to do so. Likewise, Glasgow's own continued contributions to property taxes and upkeep even after IRT left the partnership suggest he too abided some informal profit- and cost-sharing arrangement among the parties, even though (as the jury found) that arrangement did not amount to an enforceable contract.

[6] Glasgow does not challenge the trial court's finding that the unjust enrichment claim was brought within the statute of limitations period.

The trial court endorsed a valid theory of unjust enrichment: that the Camaliers conferred a $1.7 million benefit upon Glasgow under the mistaken impression that he was contractually bound to share in related liabilities, so that they were entitled to a return of that benefit. *See* Restatement (Third) of Restitution and Unjust Enrichment § 6; *see also id.* at § 31(1) ("[A] person who renders performance under an agreement that cannot be enforced against the recipient by reason of . . . indefiniteness . . . has a claim in restitution against the recipient as necessary to prevent unjust enrichment.").[7] Glasgow's arguments to the contrary are unavailing.

## B.

Glasgow next argues that the Camaliers were not the party that conferred the $1.7 million benefit upon him and so are not the proper party to maintain this action for unjust enrichment. That $1.7 million "belonged to HCP or to Square 247," according to Glasgow. That is true in some sense, but not in a meaningful one.

---

[7] Recall that, in addition to arguing that the Three Musketeers Agreement was a pure fiction, Glasgow argued its terms were too indefinite to be enforceable. The trial court did not say which of those two theories was more consistent with the evidence (or the jury's verdict), but that does not matter, for as the trial court said: "Without deciding whether an oral agreement existed among the parties, the Court can conclude that the Plaintiffs conferred a benefit of one third share of profits to Mr. Glasgow and IRT, yet paid IRT's share of the jury verdict and attorneys' fees award."

Glasgow is correct that his $1.7 million in proceeds came directly into his personal bank account—bypassing his alter ego IRT altogether—through Square 247, and not the Camaliers. That is of no import. Charles Camalier owned and controlled Square 247 and its bank account, directed the transfer of $1.7 million directly to Glasgow, and the Camaliers might just as easily have lined their own pockets with that money (as they did with the remaining proceeds, and undoubtedly could have with Glasgow's ill-gotten cut). Square 247 was a mere vessel to facilitate these transactions, functioning like a bank account from which the Camaliers deposited and withdrew money. That is enough for us to agree with the trial court that the Camaliers conferred the benefit on Glasgow and, once the Camaliers made good on the trio's debt to HCP, it became unjust for Glasgow to retain his enrichment.

When "a third [party] makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 48. Federal courts in the District have repeatedly endorsed that principle. *See*, *e.g.*, *JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 523 n.5 (D.D.C. 2014) ("While this benefit was conferred on [the defendant] through [a third-party], the theory of unjust

enrichment could apply to indirect payments conveyed through a third-party intermediary.") (quotations omitted); *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 130 F. Supp. 3d 236, 256 (D.D.C. 2015) ("[A] number of decisions from this Court have expressly held that a benefit indirectly conferred on a defendant can support an unjust enrichment claim.") (collecting cases). Other jurisdictions likewise endorse the Restatement's approach. *See Lumford v. Yoshio Ota*, 434 P.3d 1215, 1222 (Haw. Ct. App. 2018) (noting "that courts in a number of other jurisdictions have adopted [the Restatement's] approach, recognizing unjust enrichment claims where a third party has conferred a benefit upon a defendant to which the plaintiff claims a superior legal or equitable right.") (collecting cases).

This case is similar to *Eastern Profit Corp. Ltd. v. Strategic Vision US LLC*, where plaintiff Eastern sought to recover a $1 million payment that it directed a third-party, ACA, to make to defendant Strategic. No. 18-CV-2185, 2021 WL 2554631 (S.D.N.Y. June 22, 2021). While Strategic argued that only ACA, rather than Eastern, could recoup that payment, the court disagreed. It concluded:

> [T]he fact that ACA was the immediate payor of the monies due from Eastern does not relieve Strategic of its liability to Eastern in this matter. Nor does it permit Strategic to retain the sums. It is sufficient that the payment of the $1 million relieves Strategic of any liability in restitution to either Eastern or ACA.

*Id.* at \*31.  So too here.  The trial court's order disgorging Glasgow of the $1.7 million, and ordering him to repay that amount to the Camaliers, leaves him with no residual liability in restitution to HCP or to Square 247—thanks to the Camaliers' settlement with HCP—and he does not contend otherwise.[8]

Glasgow further argues that even had the money come directly from the Camaliers, it was still not theirs to give: it rightly belonged to HCP.  That is beside the point too.  The elements of an unjust enrichment claim, outlined above, do not include an inquiry into whether the enricher was in rightful possession of the property conferred upon the enriched.[9]  To be sure, HCP had a right to (and did)

---

[8] Even if Glasgow were correct that Square 247 was the only proper party with a substantive legal right to bring the present unjust enrichment claim (our contrary conclusion notwithstanding), the "failure to prosecute in the name of the real party in interest" is not grounds for dismissal until the real party has been afforded an opportunity to "ratify, join, or be substituted into the action."  Super. Ct. Civ. R. 17(a)(3).  Given that the Camaliers had seemingly unfettered control of Square 247 at all relevant times, there is no question that Square 247 would have ratified this suit and under the circumstances could fairly be said to have constructively done so.  That reduces Glasgow's complaint to a purely formalistic one that will not stand in the way of this equitable remedy.  Glasgow's objection that a party cannot assert the legal rights of a nonparty invokes only a "prudential"—not a jurisdictional—limitation on standing.  *Martin v. Santorini Cap., LLC*, 236 A.3d 386, 393 (D.C. 2020) (describing prudential requirement that actions "must be prosecuted in the name of the real party in interest").

[9] The trial court rejected Glasgow's argument that the Camaliers should be barred from recovering because they have "unclean hands," reasoning that Glasgow

recoup its money. But it was the Camaliers who repaid the entire sum of the proceeds the trio pocketed—including the portion that went to Glasgow—thereby resolving HCP's claims against the trio. Left unresolved, however, were the respective rights of these parties vis-à-vis one another, and whether the $1.7 million conferred by the Camaliers upon Glasgow was an unjust enrichment that—"in justice and equity," *Falconi-Sachs*, 142 A.3d at 556—Glasgow should be required to return. The trial court did not err in concluding that the benefit conferred was unjustly retained by Glasgow and that he must repay it.

## IV.

Glasgow next presses his counterclaim that Charles Camalier, when serving as IRT's trustee, breached his fiduciary duties of care and loyalty. Per the IRT Trust Agreement, all questions about the trust's administration must be resolved under Maryland law. Under Maryland law, the duty of care requires a trustee to exercise "the same degree of care and diligence over the subject property as would be expected of an ordinarily prudent owner of that property." *D'Aoust v. Diamond*, 36 A.3d 941, 973 (Md. 2012). The duty of loyalty prohibits the trustee from benefitting

---

forfeited that argument when he did not raise it as an affirmative defense in his answer to the complaint. Glasgow does not challenge that ruling on appeal.

at the expense of the beneficiary, or from creating a conflict between his own interests and his obligations as a trustee. *See Hastings v. PNC Bank*, 54 A.3d 714, 726 (Md. 2012). Glasgow's two theories are that: (1) a trustee violates his fiduciary duties per se by suing his own trust, and (2) that Charles Camalier violated his fiduciary duties by causing IRT to be unjustly enriched.

He cites no legal authority for the first proposition, relying entirely on his expert's legal opinion on the matter. We give no weight to an expert witness's unsupported legal opinions, as "[e]ach courtroom comes equipped with a 'legal expert,' called a judge." *Steele v. District of Columbia Tiger Mkt.*, 854 A.2d 175, 181-82 (D.C. 2004) (citation omitted). But Glasgow's argument fails under even his own expert's analysis. The expert opined that a lawsuit would breach the trustee's fiduciary duties by putting trust assets at risk. As Glasgow emphasizes throughout his brief, IRT has no assets so none were placed at risk, rendering this argument self-defeating. The expert's opinion simply did not address the scenario we have before us, where the only funds put at risk by the trustee's suit are those of the trust's alter ego, Glasgow, rather than funds in the trust itself.

Second, Glasgow argues that Charles Camalier caused IRT to ultimately become liable to the Camaliers for unjust enrichment. Not so. Putting aside IRT's

lack of assets—which would seem to defeat this point as well—it was Glasgow's personal conduct that caused his and IRT's liability. He personally received and retained $1.7 million in proceeds from Square 247 that he had no entitlement to, and he personally refused requests to contribute to the settlement with the rightful owner, HCP, when it sought to recoup what he and the Camaliers had misappropriated. Charles Camalier's actions as IRT's trustee did not cause this unjust enrichment. Glasgow did.

## V.

Finally, the trial court awarded the Camaliers one-third of their attorney's fees and costs for this entire litigation. It reasoned that amount fairly represented fees and costs they were contractually entitled to, associated with (1) defending against Glasgow's counterclaim that they had breached the HCP Settlement Agreement, and (2) prosecuting their successful "equitable claims for unjust enrichment." That is half right. The Camaliers were entitled to recoup costs associated with defending against the counterclaim but not those associated with prosecuting their unjust enrichment claim. We thus vacate the fee award and remand for its recalculation.

The trial court interpreted two contracts as justifying a departure from the "American Rule" that all parties bear their own costs. *See 6921 Georgia Ave., N.W.,*

*Ltd. P'ship v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 971 (D.C. 2008) (noting that "contractual agreement" is one exception to the rule). Those contracts are the HCP Settlement Agreement and the IRT Trust Agreement. "The proper interpretation of a contract, including whether a contract is ambiguous, is a legal question, which this court reviews *de novo*." *See Tillery v. District of Columbia Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006)).

Under paragraph 15 of the HCP Settlement Agreement, a prevailing party in "any dispute in connection with the enforcement of this Agreement" may recover fees and costs. That raises the question whether the Camaliers' successful unjust enrichment claim was a dispute in connection with enforcing that settlement agreement. We think not. Equitable claims for unjust enrichment are, of course, not contract claims. *See generally Jordan Keys*, 870 A.2d at 62-64. While it is conceivable that they might under some circumstances be made in connection with enforcing a contract, that was not the case here. The Camaliers' effort to recoup the $1.7 million payment made to Glasgow in 2005 was not connected to enforcing the settlement agreement in any way.[10] As detailed *supra* Part III.A, while the unjust enrichment claim relates to the settlement agreement in at least one respect, in no

---

[10] Indeed, the Camaliers' counsel stated that the idea that they sued under the settlement agreement was "preposterous."

way was it an effort to enforce that agreement. The Camaliers now seem to concede the point, highlighting that they "never moved for fees based on their unjust enrichment claim" and suggesting that the trial court's award of their costs and fees attendant to that claim was a "typographical error." That does not appear to be the case, as the trial court repeated the point several times. But in any event, if there were such an error—typographical or otherwise—that is all the more reason to vacate the fee award and remand it for reconsideration.

The only portion of the litigation that involved enforcement of the HCP Settlement Agreement was Glasgow's and IRT's counterclaim for breach of it. In that counterclaim, they argued that the settlement agreement prohibited the Camaliers from suing them; the trial court disagreed, so the Camaliers prevailed on that claim and were entitled to costs and fees attendant to it. Glasgow now concedes that the Camaliers are entitled to recover the fees and costs incurred in defeating that counterclaim, but maintains that is all of the fee award they are entitled to. We agree. That counterclaim was the sole dispute between the parties connected to the enforcement of the HCP Settlement Agreement, and nothing in the settlement agreement evinces the parties' intent to sweep more broadly than that. On remand, the trial court shall determine reasonable costs and attorney's fees in relation solely to the Camaliers' defense against that counterclaim.

The second contract the trial court relied on, the IRT Trust Agreement, does not provide for any fee shifting applicable here. The agreement states that Glasgow "hereby agrees to indemnify the Trustee [Charles Camalier] . . . against any loss, liability or expense (including reasonable attorney's fees) incurred by the Trustee *in administering this trust* in good faith." In finding that provision justified an award of attorney's fees, the trial court reasoned as follows: "As the findings that IRT was unjustly enriched and that [Charles Camalier] had not breached his duty as Trustee represent 'loss or expense' that did not exist when the jury rendered a verdict, the Court concludes that [Charles Camalier] is entitled to an award of fees and costs under the IRT Trust Agreement." Missing from that analysis is any explanation as to how Charles Camalier's suit against IRT constituted administering the trust. He brought this suit in his personal capacity, not on behalf of the trust. His expenses in maintaining the suit were thus not incurred in administering the trust and the fee-shifting provision does not apply here.

The jury in fact determined that Glasgow had no obligation to indemnify Camalier for his conduct before filing suit on May 9, 2014, and Camalier was removed as trustee about two months later, on July 21, 2014. That limits any conceivable argument for indemnification to those fees and costs incurred during the

brief period between those dates, but we see no basis for even such a limited recovery under the IRT Trust Agreement.

## VI.

The trial court's judgment is affirmed. Its fees and costs award is vacated and remanded for recalculation consistent with this opinion.

*So ordered.*